## Helton v. Burdette.

(Decided May 10, 1918.)

### Appeal from Rockcastle Circuit Court.

1. Elections—School Elections—Female Voters.—Under the statute imposing upon female voters in school elections the additional qualification that they shall be able to read and write, it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced; and, one is able to write if, by the use of alphabetical signs he can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled.

2. Elections—School Elections—Female Voters.—The fact that a female voter can write her name, and no more, does not satisfy the statute and does not qualify her as a voter.

3. Elections—School Elections—Female Voters.—Where the proof shows that a female voter could write her name, but went no further, the presumption will be indulged that she could write more than her name, and was therefore qualified to vote.

4. Schools and School Districts—Transfer to Another District.—An order transferring the owner of a farm from one school district to another will be construed to transfer the entire farm, including the tenants thereon, unless the order specifically excludes them.

C. C. WILLIAMS for appellant.

E. C. O'REAR, J. B. ADAMSON and BETHURUM & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At an election held on October 6, 1917, for school trustee in sub-district 29 of educational division No. 2, known as Green Hill district, in Rockcastle county, the election officers found that the appellant, W. H. Helton had received 31 votes and that the appellee, Harrison Burdette had received 32 votes. Accordingly an election certificate was issued to Burdette, and Helton thereupon filed this action in the circuit court contesting Burdette's election upon the ground that six illegal votes had been counted for him. Burdette entered a counterclaim alleging that seven illegal votes had been counted for Helton. The circuit court found that three illegal votes had been cast and counted for Burdette, thereby reducing his vote to 29, and that five illegal votes had been cast for Helton, leaving his vote at 26. The circuit court entered a judgment dismissing the petition, and Helton appeals.

The petition specifies, (1) James Burdette, (2) Mrs. James Burdette, (3) Mrs. Allen Burdette, (4) Mrs. C. H. York, (5) Mrs. W. H. Riddle, and (6) Mrs. Charles Phillips as the illegal voters who voted for Burdette. We will consider the case of each voter briefly.

It is contended that Mr. and Mrs. James Burdette were not residents of the Green Hill school district. The second call of the boundary of that district is copied into the records and reads as follows: "thence up the creek and branch that heads at widow Renfroe's old place, now occupied by Thos. Hurst, including him." James Burdette and his wife live in the family residence on the Rider farm which lies between the main creek and the branch thereof that heads at widow Renfroe's old place. The branch of the creek lies to the right of the main creek, and appellant claims that Green Hill district lies

to the right of the branch. Appellee contends that the main creek forms the left boundary of the district. The question, therefore, is whether the branch or the main creek is the left boundary line of Green Hill district.

Several witnesses have testified that *if* the main creek constituted the left boundary line of the Green Hill district, James Burdette and his wife lived within the district; but this testimony is based upon the hypothesis that the main creek constituted the left boundary line. While there is considerable contradiction among the witnesses as to which stream forms the left boundary line of the district, the weight of the testimony shows that the branch which heads to widow Renfroe's place constitutes the left boundary line, and consequently, that James Burdette and his wife did not live in the district. Their votes therefore should not have been counted.

The eligibility of Mrs. Allen Burdette, Mrs. C. H. York, Mrs. Riddle and Mrs. Charles Phillips is attacked upon the ground that neither of them could read and write, which are two of the qualifications required of a female voter. Acts 1916, chapter 24, sec. 221. The rule in such cases is stated as follows in Williams v. Hays, 175 Ky. 173:

"In a general way, we may say it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced. On the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled."

Under this rule were these voters qualified to vote at this election? The circuit court rejected the votes of Mrs. Allen Burdette, Mrs. York and Mrs. Riddle—three in all; it counted the other three contested votes that were cast for Burdette. Mrs. Allen Burdette who is now 55 years old testified unequivocally that she could neither read nor write at the time she voted, although she had read the newspapers when she was a girl. The circuit court properly rejected this vote.

It is agreed of record that Mrs. York was not a legal voter, and the circuit court properly rejected her vote.

Mrs. Riddle can read a little but she cannot write anything except her name. That, however, does not satisfy

the statute as construed in Williams v. Hays, *supra*, which requires the voter to be able to do more than merely write her name. She must be able, by the use of alphabetical signs, to express in a fairly legible way, words in common use and of average difficulty. The court properly rejected this vote.

The circuit court counted the vote of Mrs. Chas. Phillips. She testified, however, that she was "no book scholar," but, that she could read and write a little. When she was asked to write a sentence taken from the head lines of a newspaper, Mrs. Phillips wrote the line suggested to her in a fairly legible manner, sufficient we think to satisfy the statute. The circuit court properly counted her vote. This disposes of the six votes claimed to have been improperly counted for Burdette, and requires us to reject five of them, reducing Burdette's vote from 32 to 27.

The counterclaim specified, (1) Millie Mullins, (2) Fannie Sigmon, (3) Margaret Griffin, (4) Helen Helton, (5) J. Mullins, (6) Joe Taylor, and (7) Charles Smothers as the seven persons whose votes were illegally cast and counted for Helton.

Pursuant to an agreement of record that Margaret Griffin was an illiterate, and that J. Mullins had been convicted of a felony and that both of these votes should be excluded, the circuit court so ruled.

Taking up the cases of the five remaining voters, Mrs. Mullins testified that she could write her name and the names of her children; and she did so in a fairly legible manner. But, as above stated, this did not satisfy the statute. Opposing counsel asked her to read section 26 of the Civil Code of Practice, and it is contended that she did not read it fluently, how well we can only conjecture. Appellant insists, however, that section 26 of the Civil Code should not be used as a test of the voter's ability to read since it is not "composed of words of common use and of average difficulty." We are inclined to agree that this criticism is well taken. The witness was then asked to read the 20th chapter of Exodus, and it is contended that she read this reasonably well. She was then asked to spell the words, "and," "God," "earth," "boy," and "Exodus," which she did fairly well, making a few mistakes. She further testified that she had read the Bible and a newspaper whenever she had one, but her ability to write was confined to writing

her own name and the names of her family. This was not sufficient; and her inability to write made her ineligible. The circuit court properly rejected her vote.

It is clear from the testimony of Mrs. Fanny Sigmon that she can write her name only. Under the rule above announced she was not a qualified voter. Her vote should, therefore, be excluded.

The only evidence that Mrs. Helen Helton could not read and write is that shown by a deed of record in the county court clerk's office that purports to have been signed by her, by mark. The county court clerk testified, however, that there are two other deeds of record in which Mrs. Helton signed her name in person. One of the original deeds is in this record and shows that Mrs. Helton wrote her name legibly. Furthermore, the signing of the deed by her mark is explained by the fact that she was out in a field picking beans at the time, and that the clerk told her it would be less trouble for her to sign by her mark than to write her name. There being no other proof of her inability to write, the presumption will be indulged that she could write more than her name. The circuit court properly counted her vote.

It is claimed Charles Smothers did not live within the district. It appears, however, that he lived upon the farm of Jeff Holman and that the record of the county superintendent shows the following facts bearing upon the question: Oak Hill district is No. 9; Green Hill is No. 29. Jeff Holman is a trustee in Oak Hill district and lives on what was formerly known as Jeff Coffey's farm. The school record fixing the boundary of Green Hill district in 1896, shows that it "included Jeff Coffey's farm." That boundary was, however, changed in 1911, by the following recital: "Jeff Holman is changed from district 29 to 9."

Appellant insists that the effect of these two descriptions is that the 1896 boundary placed the Coffey farm in Green Hill district, and that the change of 1911, only removed Jeff Holman from that district, leaving the farm, or at least that portion of it upon which Smothers lived as a tenant, in the Green Hill district.

G. M. Ballard, who was county school superintendent from 1902 to 1910, testified that, in such cases he always ruled that a change like that of 1911 would only affect Holman, and would not remove the farm; while Mrs. Davis, the present superintendent, testified that

she and her predecessors in office, in so far as she is advised, have always held that a man's whole farm is included in the district whenever the owner of the farm is included. While it is conceded that Holman lives in Oak Hill district on the same farm upon which Smothers lives as a tenant, it is not shown that any portion of that farm is in Green Hill district. Appellant rests his argument solely upon the strict letter of the order of 1911. We think this is a strained construction of the language used. It is much more reasonable to hold, as we do, that when a school boundary includes the owner of a farm, naming him, it also includes his farm, and those living upon it, unless there are words of exclusion, showing a contrary intention. We conclude that Smothers was not a resident of Green Hill district, and his vote should not be counted.

By thus excluding the five votes of Mrs. Mullins, Fannie Sigmon, Margaret Griffin, J. Mullins and Charles Smothers, Helton has 26 votes to his credit, as against Burdette's 27 votes. It therefore becomes unnecessary to consider the question of Joe Taylor's ineligibility, based upon his alleged insanity, since in no event could it change the result. It would, if counted, leave the result standing 27 to 26, in Burdette's favor; if rejected, it would reduce Helton's vote to 25.

Judgment affirmed.