McCool *et al.* v. State *ex rel.* Howie, Dist. Atty.*

(En Banc. Jan. 2, 1928.)

[115 So. 121. No. 26664.]

1. Officers. *Constitutional provision as to qualification of officers
forbids legislature to prescribe additional qualifications (Const.
1890, section 250).*

Section 250 of the Constitution of 1890 providing that "all quali-
fied electors and no others, shall be eligible to office, except as
otherwise provided in this Constitution," forbids the legislature

Sept., 1927] McCool v. State ex rel. Howie. 83

149 Miss.]                              Syllabus.

to prescribe additional qualifications to those prescribed in the Constitution.

2. OFFICERS. *Municipal and statutory offices created by legislature are subject to constitutional qualifications; legislature cannot prescribe qualifications for municipal and statutory offices additional to those prescribed by Constitution; any qualified elector is qualified to fill municipal and statutory offices created by legislature (Constitution 1890, section 250).*

Municipal and statutory offices created by the legislature are subject to the provisions of section 250 of the Constitution of 1890, and the legislature cannot prescribe additional qualifications for such offices. Any qualified elector is qualified to fill such offices.

3. CONSTITUTIONAL LAW. *Provision of Constitution relating to subject cannot be enlarged or restricted by legislature, in absence of constitutional warrant; Constitution enumerating powers granted or denied must be held to have named all powers so dealt with as being, with necessary implications, sole limit of authority or restriction.*

Where the Constitution deals with a subject, its provisions cannot be enlarged or restricted by legislative enactment, in the absence of constitutional warrant for so doing; and, where the Constitution enumerates power granted or denied, it must be held to have named all of the powers so dealt with as being, with the necessary implications, the sole limit of authority or restriction.

4. OFFICERS. *Provision that, in case of increase of indebtedness not authorized by electors, mayor and aldermen shall not succeed themselves or each other, held void (Constitution 1890, section 250; Hemingway's Code 1927, section 7015).*

That portion of section 3430, Code of 1906 (section 7015, Hemingway's Code 1927), which provides "in case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other," is unconstitutional and void.

5. OFFICERS. *Constitutional provision requiring general laws to prevent abuse by cities, towns, and other municipal corporations of powers concerning finances held not to give legislature power to add to qualifications for holding public offices (Constitution 1890, sections 80, 250).*

Section 80 of the Constitution of 1890, which provides that provision shall be made by general laws to prevent the abuse by cities, towns, and other municipal corporations of their powers of assessment, borrowing money, and contracting debts, does not empower the legislature to add to the qualifications for holding public offices.

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 707, n. 27; Officers, 29Cyc, p. 1376, n. 22, 23; p. 1377, n. 38 New.

Appeal from circuit court of Madison county.
Hon. W. H. Potter, Judge.

Quo warranto by the state, on the relation of J. H. Howie, district attorney, to remove D. C. McCool and others, aldermen of the city of Canton, from office. From a judgment for the relator, defendants appeal. Reversed, and judgment rendered for defendants.

*T. S. Ward, H. T. Huber, E. B. Harrell* and *H. B. Greaves,* for appellants.

I. Who are Public Officers under section 266, Constitution of Miss.? Are City Officers Public Officers? See *Kierskey v. Kelly,* 80 Miss. 803; *Lizano v. Pass Christian,* 96 Miss. 540; *State v. Armstrong,* 91 Miss. 513.

II. The appellants, being constitutional officers, what jurisdiction has the circuit court to entertain this writ, and enter judgment of ouster, without appellants having first been indicted by a grand jury and convicted, and even then, did the circuit court, or the Governor have the right of removal and again, are their successors to be appointed by the Governor as members of the board of mayor and aldermen, or elected by the people? Nowhere do we find any statute authorizing the circuit court to remove any officer for failure to perform any duty before indictment and conviction. Section 5990, Hemingway's Code, Section 3430, Code 1906, if constitutional, vests the power of suspension and removal in the Governor, and since the ascertainment of the necessary facts

to bring a member of the board of aldermen within the purview of this statute (conceding for argument sake it is valid), is strictly a judicial province; all the circuit court could possibly do under this statute, would be to ascertain whether or not the facts alleged existed and if found to exist, it is, under this section, up to the Governor to suspend and appoint the successor, pending indictment and conviction.

Again, this section gives the Governor the right to appoint a successor, "Who shall hold until the next election and qualification of officers thereunder." The last quoted paragraph is directly in conflict with section 6824 of the same Code (section 4190 of the Code of 1906), if we construe this to mean next general election. Section 6824, Hemingway's Code, vests this appointing power in the "board of aldermen of said city, town or village," if term does not exceed six months and if more, by an election. If both sections are valid, here is a direct conflict. Which section governs? This court has repeatedly held that only upon conviction for wilful neglect of duty or misdemeanor in office can an officer be removed, and that such is the exclusive mode of removal. *Hyde* v. *State,* 52 Miss. 665; *State* v. *Glennen,* 93 Miss. 836; *Lizano* v. *Pass Christian,* 96 Miss. 640. A conviction before a justice of the peace is not sufficient. *Moore* v. *State,* 45 So. 866; *Ex parte Lehman,* 60 Miss. 567; *State Board of Health* v. *Mathews,* 113 Miss. 510. See, also, *Mayor of Jackson* v. *State,* 102 Miss. 663; *Ex parte Brown,* 112 Miss. 236.

It is provided by section 6, chapter 325, Acts of 1924, that the refusal or neglect of any officer to perform any of the duties provided in that chapter required of such officer will subject the person offending to removal and also will constitute a misdemeanor, etc. By provisions of section 3430, Code of 1906, being section 5990, Hemingway's Code, under certain conditions, it is provided: (a) "The mayor and aldermen shall be suspended from office; and (b) "The Governor shall appoint their suc-

cessor." Both of these propositions are in direct conflict with the Constitution. The first part (a) could be upheld by construing it in harmony with section 175 of the Constitution, and requiring that such offender must first be indicted by a grand jury and convicted in the circuit court by a petit jury. This is the only possible way this provision can be held constitutional.

This court construed a like provision (in sec. 6, ch. 325, Acts of 1924), in *State, ex rel. Knox* v. *Board of Supervisors,* 141 Miss. 701, 105 So. 541, which seems to uphold our contention, viz.: "That before appellants can be removed, they must be indicted and convicted."

Again, while the section is silent, as to who shall suspend such offender, whether a justice of the peace, judge, chancellor, or Governor, the presumption would be it was intended to vest this power in the Governor, or if the circuit judge, then he could only suspend on indictment and conviction. But, the legislature is powerless to authorize the Governor to suspend any officer. Section 125 of the Constitution fixes what officers the Governor may suspend, and limits such to the treasurer, and tax collector, and authorizes the legislature to provide for enforcing this. This precludes the idea that the legislature can empower the Governor to remove or suspend any other officer. See *Henry* v. *State ex rel. Coody,* 130 Miss. 855, 95 So. 76. It does not require argument to show the Constitution never intended to invest a justice of the peace, judge or chancellor with the arbitrary power to remove an officer before indictment and conviction, but only can such officers be removed after indictment and conviction. A conviction on an affidavit is not sufficient—indictment is a prerequisite. (b) "The Governor shall appoint their successor." This provision is in direct conflict with section 4190, Code 1906, section 6824, Hemingway's Code, which provides for appointments of members of the board when unexpired term does not exceed six months, and by election where longer. *Ex parte Lehman,* 60 Miss. 967. This case has repeatedly been

cited and approved by this court in *Lizano* v. *Pass Christian, Henry, Ins. Com.,* v. *State ex rel. Coddy,* and *State Board of Health* v. *Mathews,* all *supra.* Appellants have never been indicted or convicted, therefore, the circuit judge could not remove them from the offices they hold.

Since increasing the municipal debt without submitting the same to a vote is a misdemeanor, the only way to remove an officer for such is by indictment and conviction. The only provision of the statute that such officer shall be ineligible to succeed themselves is a part of the punishment prescribed by the statute on conviction. It is true that section 80 of the Constitution directed the legislature to enact laws to prevent municipal corporations from abusing their power to tax and borrow money, and it was evidently in view of this provision that section 5990, Hemingway's Code (3430) was passed. Section 5990, Hemingway's Code, simply sets out additional causes for indictment under section 1302, Code 1906, and conviction, and also provided an additional punishment, that such offending aldermen could not succeed themselves. These two statutes must be construed together, and with due regard to section 175 of the Constitution of the state of Mississippi. *State* v. *Glennen,* 93 Miss. 836. In *State* v. *Cavett,* 78 Miss. 851, the court had under consideration this section where *quo warranto* proceedings were filed against Cavett to remove him from the office of alderman of the city of Jackson. The constitutionality of this section was passed by the court, because the cause was dismissed on other grounds.

IN RESPONSE TO THE COURT'S REQUEST.

*T. S. Ward, H. T. Huber, E. B. Harrell* and *H. B. Greaves,* for appellants.

The rule adopted by all of the courts is that where a state Constitution prescribes the qualifications of a constitutional office, the legislature has no authority to prescribe additional qualifications, or to remove any of

the requirements provided for in the Constitution, unless the Constitution expressly or by necessary implication gives the legislature that power. Section 80 of our present Constitution reads as follows: "Provisions shall be made by General Law to prevent the abuse by cities, towns and other municipal corporations of their power of assessment, taxation, borrowing money and contracting debts." This section does not hint at any right given the legislature to disqualify an alderman.

First: Can the legislature, under this section, prescribe the qualifications for holders of offices of aldermen? Second: Does section 250 of the Constitution expressly or by implication prevent the legislature from adding to or taking from the qualifications necessary to hold office? Third: Is there any difference between the power of the legislature to prescribe additional qualifications for an office named especially in the Constitution, and those not so named? See *Lizano* v. *Pass Christian,* 96 Miss. 641; *Madison County* v. *Howard,* 119 Miss. 113; *Board of Highway Commission* v. *Warren,* 121 Miss. 269, 83 So. 470; *Wynn* v. *State,* 67 Miss. 312.

The supreme court of Ohio has held apparently in conflict with the opinion of our court. See *State ex rel. Attorney-General* v. *Covington,* 29 Ohio 102, but a perusal of that case will show that the Constitution of the state of Ohio then in force distinctly gave the legislature the power to prescribe additional qualifications for the superintendent of education. In *Darrow* v. *People,* 80 Colo. 417, the legislature added the requirement of paying taxes to the qualification of aldermen, when the state Constitution provided as follows: "No person, except a qualified elector shall be elected or appointed to any civil or military office in this state." The question presented to the supreme court was, would this section of the Constitution prevent the legislature from adding property qualifications for holding the office of alderman to the constitutional provisions. The court used this language: "But it will be observed that the language used is

negative in form. That is it simply prohibits the election or appointment to office of one not a qualified elector. There is no conflict between it and the statute by providing that a superintendent or an alderman shall be a taxpayer. The legislature does not declare that he need not be an elector.'' Note the similarity between that Constitution and ours of 1868 in force at the time of the decision in the Wynn case. See further in this connection: *Hyde* v. *State,* 52 Miss. 665.

We will now come to the last query made by the court in the letter to the counsel: ''Is there any difference between the power of the legislature to prescribe qualifications for office holders of constitutional offices or legislative offices?'' In other words, is there any difference between the power of the legislature to prescribe additional qualifications for an office named in the Constitution and those not so named.

Are aldermen constitutional officers or are they such officers as the framers of the Constitution had in mind when section 250 of the Constitution was adopted? I have repeatedly examined the decisions in this state which tend to bear on this proposition, and this court has universally, whenever the question has been referred to, made no distinction between officers filling offices named in the Constitution and those created by the legislature. They have treated all public offices alike. In *Lizano* v. *Pass Christian, supra,* Judge Mayes delivered a strong opinion, which sets at rest any question of removal of an alderman by any method other than prescribed by section 175 of the Constitution, and this case has been cited and approved in: *Board of Health* v. *Mathews, supra; Saw Mill Company* v. *Marx & Son,* 117 Miss. 251; and *McClure* v. *Whitney,* 120 Miss. 373. See, also, *Mayor & Aldermen of the City of Jackson* v. *State,* 102 Miss. 663, where the form of the City Government had been changed from the old regime of board of mayor and aldermen to the commission form of Government, the court held that the legislature had a right to abolish this office and

change the form of Government, and it, therefore, legislated out of office the board of mayor and aldermen then existing. Note section 108 of the Constitution, whereby the legislature is given the right to take away the duties of an office. See, also, *Kierskey* v. *Kelly, supra; State* v. *Cavett, supra; State* v. *Kelley,* 80 Miss. 1.

I know of no section of the Constitution which gives any authority to the legislature to disqualify any officeholder from holding office, except that prescribed by sections 50 and 51 of the Constitution, for treason, etc.

*Howie, Howie & Latham,* and *A. K. Foot,* for appellee.

The first paragraph of section 3216 of Hemingway's Code 1927, fully answers the first and second ground of demurrer. The third, fourth and fifth grounds of demurrer present the only question that the appellants seriously contend for in this case. Appellants rely on the generality that public officers, "for wilful neglect of duty or misdemeanor in office," can be removed only after they have been indicted and convicted for such neglect or misdemeanor, under section 175 of the Constitution.

The foregoing section of our Constitution has been passed upon numerous times by this court. These cases are all cited under the annotations in Hemingway's 1927 Code. Under this section, there is no doubt that appellants are public officers in the "constitutional sense." We admit that. We also admit that if this were a proceeding to remove appellants for "wilful neglect of duty or misdemeanor in office" committed during their present term, section 175 would apply, and it would be necessary for us to show an indictment and conviction. On the other hand, a *quo warranto* proceeding would not be necessary or proper because, after an indictment and conviction, it would be mandatory upon the circuit court which tried the officers on the indictment found against them, after, imposing a fine or imprisonment, as a part of the sentence, to remove them from office. In *Shat-*

*tuck* v. *State,* 51 Miss. 575, it was held that the penalty of removal prescribed is mandatory. The court, in the Shattuck case, says, "There is no discretion and no alternative but removal from office." But the information in this case is brought on an entirely different theory, that is, ineligibility. The state is not attempting to remove appellants for "neglect of duty or misdemeanor" during their present terms. The state is questioning their right to hold office by reason of the fact that they have disqualified themselves. Section 7015, Hemingway's Code 1927; *Brady* v. *Howe,* 50 Miss. 607, is conclusively against appellants' contention in this case. Section 175 of the Constitution punishes the act of wilful neglect of duty or misdemeanor in office, in addition to the fine or imprisonment imposed by said act, and, as a further punishment, removes the offender from office. Section 7015, Hemingway's Code 1927, does not punish the act of increasing the indebtedness of the municipality unauthorized by the electors, but makes the fact of such increase a disqualification for the offending alderman to succeed himself. This is part of a complete scheme by our Constitution and legislature for the absolute control of the fiscal affairs of municipalities. It is gathered from the experience of the past in relation to municipal abuses of taxation and unsound financial operations of municipalities. Municipalities in this country are of recent growth, especially in this state, Mississippi being a rural state. The framers of our Constitution, recognizing the necessity of complete control by the state of the fiscal affairs of municipal corporations, enacted section 80 of the Constitution. Section 7015, Hemingway's Code 1927, is in direct response to section 80 of the Constitution. See *Adams* v. *Kuykendall,* 83 Miss. 592, 35 So. 830. Manifestly the legislature has authority to provide additional qualifications for municipal officers, and this they have done in the enactment of section 7015, Hemingway's Code 1927, providing as one of the qualifications an aldermen shall have to succeed himself, in addition to his other qualifica-

tions, that the indebtedness of the municipality shall not
have been increased by any action on his part, without
submitting such increase to the electors, in his preceding
term. It is the fact of the increase, and not the act that
disqualifies. It is clear that appellants cannot invoke sec-
tion 175 of the Constitution in this case. Section 80 of our
Constitution and section 139, as well as section 175, do not
appear in any of our previous Constitutions. We first
find them in the Constitution of 1890; they must be con-
strued together and reconciled if possible. Another prop-
osition that the court should bear in mind is that sections
80 and 139 of the Constitution, and section 3026 of the
Code of 1892, were not enacted for the purpose of pun-
ishing the mayor or members of the board of aldermen.
Section 3026 provides no penalty for its violation except
suspension by the governor, and, in the case of an unau-
thorized increase of the indebtedness, disqualification of
the officer to succeed himself. It should be borne in mind
that these sections are not for the punishment of the of-
fender but for the protection of the people, the taxpay-
ers of the municipality. The electors of Canton have
more rights in this matter than the appellants. The pro-
visions referred to were passed for the benefit of the
citizens of Canton in order that the citizens should not
have their indebtedness increased each year without their
expressed approval; that men, who had, by their "own
record," shown their unfitness, should not continue in
office. A most wise provision. Each year its wisdom is
more apparent.

Appellants contend "that section 5990 of Hemingway's
Code, is in direct conflict with section 6824, if construed
independent of each other. That these two sections
should be construed together, and the court erred in
holding that it had jurisdiction to remove the appellants
without the appellants having first been indicted by the
grand jury." This assignment is rather premature. It
would be ample time for us to consider whether the gov-
ernor or the mayor and the remaining aldermen shall

appoint appellants' successors, when this court has affirmed the judgment of the lower court, adjudging the offices which appellants hold as vacant because of appellants' ineligibility. In any event, sections 5990 and 6824, Hemingway's Code of 1917, are easily reconciled. Under section 5990, the governor appoints an alderman's successor when the exigencies of the case are such as demand his suspension by the governor. Under section 6824 provision is made for appointment by the mayor and aldermen when there is a vacancy caused by conditions not unusual, such as death or removal from the city.

In Response to Court's Request: This brief is in response to a request by the court on the matter of the constitutionality of section 3430, Code of 1906, section 5990, Hemingway's Code of 1917, and section 7015, Hemingway's Code 1927, providing for the disqualification of an alderman to succeed himself when he has increased the indebtedness of the municipality without an election therefor. The court refers especially to *Wynn* v. *State,* 67 Miss. 312, 7 So. 353. The Wynn case was under the following sections of the Constitution of 1869; Section 18, article 1; section 2, article 7; section 4, article 7; section 4, article 8. The legislature of 1888, by an act, provided that a county superintendent of education should hold' a first grade teacher's certificate. Judge Campbell in the Wynn case, held that this was an additional qualification, prescribed by the legislature, for the holder of an office created by the Constitution. In our opinion, the Wynn case was properly decided, and it certainly is still the law in Mississippi. County superintendents of education under the Constitution of 1869 were constitutional officers. The Constitution of 1869 fixed the qualifications for the officers created by it. We want to be absolutely fair with the court and, therefore, we call the court's attention to the fact that section 250 of the Constitution of 1890 is stronger than section 4, article 7 of the Constitution of 1869.

It is our contention that the Wynn case is authority only for the proposition that the legislature cannot prescribe additional qualifications for holders of offices created by the Constitution, but as to offices created by the legislature the rule is different, and municipal offices (including the office of aldermen) are legislative offices. *Booten* v. *Pinson* (W. Va.), L. R. A. 1917A. 1244, 89 S. E. 985; *Hinton* v. *Board of Supervisors,* 84 Miss. 536, 36 So. 565; *State* v. *Hill,* 70 Miss. 112, 11 So. 789, and *State* v. *Edwards,* 93 Miss. 704, 46 So. 964.

To deny the legislature the right to fix the qualifications for municipal officers is equivalent to writing section 80 out of the Constitution. See *Turner* v. *City of Hattiesburg,* 98 Miss. 337, 53 So. 681, 684. See, also, *Mayor & Board of Aldermen of City of Jackson* v. *State,* 102 Miss. 663, 59 So. 873; 22 R. C. L. 401, 29 Cyc. 1375; 19 Am. and Eng. Ann. Cas. 743.

Ethridge, J., delivered the opinion of the court.

J. H. Howie, district attorney, filed a *quo warranto* against the appellants, D. C. McCool, D. C. Ross, and F. W. White, seeking to remove them from office under the provisions of section 3430, Code of 1906 (section 7015, Hemingway's Code 1927, section 5990, Hemingway's Code 1917). The defendants in the suit were aldermen of the city of Canton during the term 1925 and 1926. They were re-elected for the term 1927 and 1928, qualified, and were inducted into office, and are exercising the powers and discharging the duties of the said office for this new term, and they are sought to be ousted from office by virtue of said section, because they increased the municipal debt during their term of office, and are, therefore, ineligible to succeed themselves in office. It is alleged that said debt was increased without being authorized by a vote of a majority of the qualified electors of said municipality. The declaration sets forth many items of indebtedness so contracted during the term 1925

and 1926, and alleges that, by virtue of the said statute, they are disqualified to succeed themselves, and prays for a judgment removing them from office.  The appellants demurred to this petition, setting up the lack of jurisdiction in the court to entertain the suit and afford the relief prayed for, or for any relief upon the allegations in the bill; also setting up in the demurrer that the statute above mentioned is unconstitutional.  The court overruled the demurrer, whereupon defendants set up by pleas practically the same things set forth as grounds for the demurrer, which pleas were demurred to by the plaintiff, and the demurrer was sustained.  Defendants were allowed to amend, their pleadings by setting up the allegations that much of the indebtedness set forth had been authorized by their predecessors in office, etc.  The cause proceeded to trial, and a judgment was rendered removing the appellants from office, from which judgment this appeal is prosecuted, a *supersedeas* having been allowed.

Section 3430, Code of 1906 (section 7015, Hemingway's Code 1927), reads as follows:

"The mayor and board of aldermen shall publish on the first of October, annually, a statement showing the amount of taxes and other moneys collected during the preceding year, giving each source of income, the amount of expenditures in detail, stating for what purposes made.  The statement shall show the resources and indebtedness of the municipality at the beginning of the fiscal year and at its close, and it must be spread on the minutes of the board.  If there have been an increase of taxation as compared with the year next preceding or if the indebtedness of the municipality have been increased during the year, by contract or by ordinance participated in or voted for by the mayor and aldermen, unless the increase be authorized by the electors as provided in this chapter, the mayor and aldermen shall be suspended from office, and the Governor shall appoint their successors, who shall hold until the next election and qualification

of officers thereunder. In case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other. In towns or villages of less than one thousand inhabitants the mayor and board of aldermen may have the statement in this section required posted in a conspicuous place in the municipality or published in a newspaper. Other municipalities shall cause it to be published in a newspaper, if there be one therein, otherwise it must be posted in at least three public places in the municipality.''

From the above statement it will be seen that this is not a prosecution for misdemeanor in office predicated upon indictment by a grand jury. The declaration did not proceed, however, upon the idea that the defendants were guilty of a misdemeanor during their present term of office, but proceeded upon the theory that they were disqualified for acts done in the preceding term, which, under the statute, rendered them ineligible to succeed themselves, and that, therefore, the *quo warranto* would lie to oust them from office because they were not eligible to hold the office; that the state by *quo warranto* could oust a person from an office which he was not qualified by law to fill. No act committed during their present term is therefore involved in the present proceeding.

In supplemental briefs filed, the constitutionality of the Constitution is challenged, because the statute is in conflict with section 250 thereof, which provides that ''all qualified electors and no others, shall be eligible to office, except as otherwise provided in this Constitution.''

There is no allegation that the aldermen were suspended during the term of office in which the indebtedness was increased. The whole case rests upon the clause in the above-quoted statute, ''in case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other.'' This clause of the statute, clearly, is intended to render the officers ineligible to succeed themselves or each other in office. It is therefore a disqualification for holding office im-

posed by the legislature upon the officers because of such acts; and, as there was no indictment and removal from office, under section 175 of the Constitution, the whole case hinges upon the validity of this statutory disqualification to hold office.

Can the legislature impose a disqualification in addition to that stipulated for in section 250 of the Constitution, above quoted?

In *Wynn* v. *State*, 67 Miss. 312, 7 So. 353, the court had before it the question whether the legislature could add a qualification, not named in the Constitution, for the office of county superintendent. Section 2 of the act there involved provided:

"No person shall be eligible to. such office of county superintendent of education who does not hold a first-grade certificate; and the term of county superintendents of education so elected under this act shall begin on the first Monday in January, 1890, and shall continue two years, or until said superintendent's successor shall qualify." Laws 1888, chapter 36.

Wynn, the officer elected in that case, was elected at the election in November, 1889, and on the first Monday in January following took the oath, and entered upon the duties of the office, when the district attorney, on behalf of the state, filed an information in the nature of a *quo warranto* against him to try his right to said office.

The information alleged that the act of 1888, providing for the election of county superintendents of education in certain counties, was unconstitutional, being in violation of article 8, section 1, of the Constitution of 1869. His eligibility was also assailed, because at the time of his election and qualification he did not hold a first-grade certificate, as required by section 2 of the act.

By section 18, article 1, of that Constitution (1869), it was provided that "no property or educational qualification shall ever be required for any person to become an elector." Section 2 of article 7, made "all male inhabitants of this state [with certain exceptions], twenty-one

years old, . . . etc., qualified electors.'' And by section 4 it was provided that ''no person shall be eligible to any office . . . who is not a qualified elector.'' The court in its opinion said:

''These provisions make it clear, we think, that every qualified elector is eligible to any office for which other qualifications are not specifically required by the Constitution. For many of the offices created by its qualifications of age or residence are prescribed. As to other offices for which it provides there are no qualifications required, except that contained in section 4 above, viz. to be a qualified elector. This shows that, where other than the general requirement to be a qualified elector was intended, it was prescribed, and where no special qualification for an office was prescribed it was as intended that the general provision should apply, and to be a qualified elector is sufficient. From the provision 'no person shall be eligible to any office . . . who is not a qualified elector,' the implication is very strong that a qualified elector shall be eligible to any office, unless otherwise provided; and, in view of the fact that it is otherwise provided as to certain offices, the implication becomes a necessary one, and decisive against the claim of power in the legislature to add to the constitutional qualification for office. It is inconceivable that the framers of the Constitution in providing, 'that the legislature shall have power to make said office of county school superintendent of the several counties elective, as other county officers are,' intended to include the power to restrict and limit the range of choice by the qualified electors, so as to exclude all except such as should comply with certain requirements unknown to the Constitution, and not in harmony with its spirit and provisions. If the legislature has the power to prescribe qualifications for an office created by the Constitution, it may make them what it pleases in its discretion. Grant the power and it must be held to be without limit, except by some positive prohibition of the Constitution, and there is none except that

'no property qualification for eligibility to office shall ever be required,' and that no one but a qualified elector shall be eligible to any office. Suppose that the legislature, instead of imposing as it endeavored to do, a just and proper condition of eligibility to the office—one calculated to secure fitness and efficiency—had provided that none except colored men should be eligible in certain counties, or had made some other requirement equally absurd and ridiculous, would any be found to contend for the validity of such an enactment? It is thus seen that the only safe course is to deny the right of the legislature to add to any office created by the Constitution, any qualification for the incumbent not imposed by the Constitution itself. As offices were created by it, and the subject of qualification dealt with and special requirements made for certain offices, and general requirements as to all, it must be assumed that it prescribes all that was intended, and that none can be added, however appropriate they may be.''

This decision was rendered at the October term, 1889, the year preceding the constitutional convention of 1890, and must have been fresh and clear in the minds of the members of that convention. The fact that it was in their minds is apparent from the fact that the qualification for county superintendent was provided for in section 204 of that Constitution, and the legislature was given power to prescribe the qualification, compensation, and duties therefor in express terms. This, it seems to us, indicates that the convention did not intend to leave it to the legislature to prescribe qualifications in addition to those fixed in the Constitution. It is further evidenced, from a careful consideration of the language of section 250, that ''all qualified electors  .  .  .  shall be eligible to office, except as otherwise provided in this Constitution,'' meant to take from the legislature all power with reference to qualification for office not included in the Constitution itself. Had it been the intention of the convention to allow the legislature to provide additional

qualifications, it would have been written "except as otherwise provided by law." The convention did not choose to use the term "provided by law," but chose to use the words "provided in this Constitution" instead.

An examination of the different sections of the Constitution will show that as to many officers other qualifications than being an elector were added. Judges of the supreme court, chancery and circuit courts, and the attorney-general, have all been required, not only to be qualified electors, but to have been practicing lawyers, for a good length of time, also to have attained certain ages, and to have been resident citizens of the state for a number of years. The Governor, Lieutenant Governor, secretary of state, auditor, and state superintendent of education are required to have special qualifications; and by various sections of the Constitution, additional qualifications to that of being a qualified elector are required. It is therefore manifest that the constitutional convention carefully considered the subject of qualification for office, and prescribed such qualification as the convention thought necessary to be provided, having in view public policy, and the good of the state.

It is argued here, as it was in the Wynn case, that the section was dealing only with constitutional offices; and it is insisted that, as municipal offices were not provided for in the Constitution specifically, but were left to be created by the legislature or abolished by it, the legislature could prescribe the qualification desired for such offices.

Does section 250 of the Constitution authorize the legislature, in creating statutory offices, to prescribe additional qualifications therefor? In other words, does the provision of the Constitution here apply to municipal and other statutory offices?

In *Roane ex rel. Tunstall* v. *Matthews*, 75 Miss. 94, 21 So. 665, it was held that a municipal officer must be a qualified elector of the state and county, as well as of the city; and that an officer who is not a registered voter

although inducted into office, can be ousted from such office because not so qualified. And many other provisions of the Constitution and decisions will show that the constitutional convention had in mind municipal offices in making the various provisions therefor.

Section 20 of the Constitution prohibits the election or appointment of any person to office in this state for life or good behavior, but provides that the terms of all officers shall be for some specified period.

In *Monette* v. *State*, 91 Miss. 662, 44 So. 989, 124 Am. St. Rep. 715, it was held that this section of the Constitution applies to municipal, as well as state and county, officers, and that a municipal ordinance purporting to authorize the appointment of policemen during good behavior is unconstitutional and void.

It will be noted that municipal officers are not specifically embraced in the language of section 20 of the Constitution, but the court has held that it applies to them, the same as to state and county officers.

In *State ex rel.* v. *Armstrong*, 91 Miss. 513, 44 So. 809, it was held that section 2 of the Constitution prohibiting an officer in one department from exercising the powers properly belonging to an officer in another of the three departments applies to a mayor. It was there held that the mayor's office is executive, and that the office of justice of the peace is judicial, and that they are incompatible, and cannot be held by the same person at the same time, and the acceptance of the office of mayor by a justice of the peace is itself a vacation by him of the judicial office, under section 2 of the Constitution.

In *Moore* v. *State* (Miss.), 45 So. 866, not officially reported, Moore was tried on affidivit for misdemeanor in office, in a justice of the peace court. The affidavit charged that he, as marshal of the town of Senatobia, had arrested the affiant, and forced him to work upon the streets, when, as a matter of fact, affiant had never been tried or convicted of any offense, and no fine or costs had been imposed upon him. The mayor was tried

before a justice of the peace, found guilty, and fined twenty-five dollars and costs, and removed from his office as marshal. He appealed to the circuit court, and was again convicted and sentenced to pay the same fine imposed by the justice of the peace, and removed from office by the circuit court.. On appeal to this court this court held, speaking through Justice Calhoon, that the proceeding was in violation of section 175 of the state Constitution, which required an indictment as well as a conviction to authorize a removal from office, and that that method was exclusive, citing authorities.

In *Lizano* v. *City of Pass Christian,* 96 Miss. 640, 50 So. 918, it was held that section 175 of the Constitution of 1890 applies to city marshal, and that a municipal ordinance, predicated of the Code of 1906, section 3332, providing "for the impeachment and removal of elective officers" for willful neglect of duty or misdemeanor in office by the mayor and board of aldermen, without indictment and conviction as a condition of removal, is void.

In *Adams* v. *Miss. State Bank,* 75 Miss. 701, 23 So. So. 395, it was held that section 112 of the Constitution, providing that taxation shall be uniform and equal throughout the state, and that property shall be taxed in proportion to its value, applies to municipalities. At page 718 (23 So. 395) of the Mississippi report the court said:

"At the very threshold of this investigation, we are met by the earnest contention of counsel for appellee, that section 112 does not refer to municipal taxation, but only to such taxation as may be imposed for the purpose of providing revenue for the administration of state and county affairs. Learned counsel support their argument by numerous citations from other states. We have given the subject the careful research which its gravity and importance demands, and are constrained to adhere to the decisions of our supreme court. In *Daily* v. *Swope* [47 Miss. 367], it was held that the general system of

taxation within the scope of section 20, article 12, Constitution 1869 (as distinguished from taxation for the purpose of local improvements), referred to the 'impositions and assessments for the general, usual, and ordinary purposes of the state and the county and municipal bodies.' And this doctrine was expressly reaffirmed and approved in *Vasser* v. *George* [47 Miss. 713], where it was said: 'The limitation upon the power in that section (section 20, article 12) only applies and governs taxes levied for the usual, ordinary, and general purposes of the state, county, and incorporated city or town.' We are forced to reject the contention of appellee, and are content to abide by these decisions. Clearly section 112 does apply to and governs municipal taxation. See, also, *Southern R. R. Co.* v. *Jackson,* 38 Miss. 334."

It appears plain to us from these provisions that section 250 applies to municipal and statutory officers as well as to constitutional officers; and that the constitutional convention enumerated all the cases where, in its opinion, special qualifications are required. The fact that it might be well to require additional qualifications in particular instances cannot affect the construction of the constitutional provision in the light of the decision of the *Wynn case, supra*. It must be remembered that, from the establishment of the American government following the Revolution, down to at least 1890, the people have been jealous of their political rights, and their right to participate in the offices of the government and the management of public affairs, and this has been esteemed one of the privileges of American citizenship. The constitutional convention sought to perpetuate this principle in the Constitution. It is true, too, the legislature is free to create additional offices for the public welfare. But it manifestly intended that, where the Constitution itself had not provided to the contrary, the legislature could not prescribe additional qualifications. As said by Judge Campbell in the Wynn case, "if the legislature can

prescribe additional qualifications, its power is without limit.''

In *State* v. *Henry,* 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340, it was held by this court that, ''where the Constitution deals with a subject, its provisions cannot be enlarged or restricted by legislative enactment, in the absence of constitutional warrant for so doing;'' and, ·''where the Constitution enumerates power granted or denied, it must be held to have named all of the powers so dealt with ·and as being, with the necessary implications, the sole limit of authority or restriction.'' This is a familiar rule of constitutional and statutory construction, and has been announced in many other cases. We are therefore of the opinion that so much of section 3430, Code of 1906 (section 7015, Hemingway's Code 1927), as provides that, ''in case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other,'' is unconstitutional and void.

It is urged by the appellee that section 80 of the Constitution which provides that provision shall be made by general laws to prevent the abuse by cities, towns, and ·other municipal corporations of their powers of assessment, borrowing money and contracting debts, authorizes the legislature to provide, as it does in section 3430, Code of 1906 (section 7015, Hemingway's Code 1927), for eligibility of officers violating such restrictive statutes. We do not think this section of the Constitution is susceptible of that construction. We would not undertake to say just where the limit of legislative power under section 3430, Code of 1906 (Section 7015, Hemingway's Code 1927), is to be drawn, but it does not reach to a case of this kind. The legislature, clearly, could make void a debt created in violation of law, and could make the officers incurring it subject to indictment, trial, and punishment, and, as a part of the punishment, removal from office, but it cannot add to the qualification prescribed by the Constitution for holding office. The

two sections must certainly be construed together, and, under the granting power of section 80, it certainly was not contemplated that the legislature should violate any of the provisions of the Constitution in enacting laws to carry out section 80.

The judgment of the court below will therefore be reversed, and judgment rendered here for the appellants.

Reversed, and judgment here for appellants.

*Reversed.*