[Civ. No. 9594. First Appellate District, Division One.—May 7, 1935.]

W. W. BRUCE, Respondent, v. CIVIL SERVICE BOARD OF THE CITY OF OAKLAND et al., Appellants.

F. Bert Fernhoff, City Attorney, and John W. Collier, Deputy City Attorney, for Appellants.

Decoto & St. Sure for Respondent.

THE COURT.—Appeal from judgment of Superior Court, for the County of Alameda, issuing writ of mandate against Civil Service Board.

W. W. Bruce applied to the Civil Service Board of Oakland for leave to take the examination for the position of patrolman in that city. His application was denied because among his listed qualifications was not that of "(5) Education: Completion of 12th Grade", a prerequisite which the notice of examination specified. On his petition the Superior Court for the County of Alameda issued a writ of mandate, ordering said board to permit him to compete; thereafter, on appro-

priate proceedings therefor, said court enjoined the conducting of examinations for patrolman or the preparing of an eligible list until such time as the appeal in the proceeding numbered 9594 should reach finality. The appeals in the injunction and in the *mandamus* proceedings are consolidated as the determination of the latter will settle the controversy. (Page 7, Appellant's brief.)

Oakland operates governmentally under a city charter. Section 88 of article XIV thereof, in part here material, reads: "Qualifications. No person shall become a member of the Police Department unless he shall be . . . able to read and write the English language . . . "

Article XIII captioned "Civil Service", provides: "Rules. Section 73. The Board shall make rules to carry out the purposes of this article, and for the examinations, appointments and promotions. All rules and all changes therein shall be forthwith printed by the Board for distribution.

"Examinations. Section 74. All applicants for places in the classified civil service, shall be subjected to examination, which shall be public, competitive and free. The Board shall hold such examinations on the first Monday in April and the first Monday in October of each year, and oftener if it deem necessary. Such examinations shall be for the purpose of determining the qualifications of applicants for positions, and shall be practical and shall fairly test the fitness of the persons examined to discharge the duties of the positions to which they seek to be appointed."

The Civil Service Board adopted rule 25, which follows: "Rule 25 Qualifications (a) Education. The rating in 'education' shall be determined from evidence of schooling or of specialized study which would indicate that the candidate's abstract and practical knowledge is within the scope of the minimum qualifications."

The appellant contends that the Civil Service Board has power to establish an educational qualification of completion of twelfth grade or its equivalent, for applicants in entrance examinations into the police department by virtue of section 73 of the charter, and, therefore, that it rightfully denied petitioner and respondent permission to participate therein. The petitioner and respondent agrees that the position of patrolman is within the classified civil service of the

city, and that appointments thereto must be made from an eligible list established by the board, after examination. He claims, however, that sections 73, 74 'and 88 of the charter cannot be construed so as to permit the board to prescribe a rule which will deny the applicant the right to take an examination on a free, open and competitive basis, provided said applicant meet the minimum qualification established by the charter which is, in this behalf, that he be able to read and write the English language. The appellant board seeks to justify the exclusion from the right to be examined of all persons who have not twelfth grade standing, upon the theory that police departments should be graded up and that members thereof should possess a high standard of education. This view, however, does not meet the point. Assuming merely for illustration that under sections 73 and 74 of the charter, the Civil Service Board would have the right to set as a standard to be attained by the persons examined, the equivalent of twelfth grade standing, it does not follow that the board would have the right to exact twelfth grade standing as a condition of taking the examination. Section 88 of article XIV provides that every applicant for the position in question shall be able to read and write the English language, while section 74 provides that examinations shall be for the purpose of determining the qualifications for the particular position and shall be practical and shall fairly test the fitness of the applicant to discharge the duties of the position which he seeks.

When a city charter has been approved by the legislature and is in force, it is to be construed as a law enacted by the legislature. (*Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676]; *Stern* v. *City Council of Berkeley,* 25 Cal. App. 685 [145 Pac. 167]; *Taylor* v. *Cole,* 201 Cal. 327 [257 Pac. 40]; *Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447].)

To ascertain the meaning or intent of the various provisions of the charter different sections or provisions must be read together, with a view to harmonizing them. (*Marshall* v. *Williams,* 85 Cal. App. 507 [259 Pac. 970]; *Crowe* v. *Boyle,* 184 Cal. 117 [193 Pac. 111].)

It is a general principle of statutory construction as applied to charters, that latitude is given to civil service boards to adopt rules governing method of examination and

markings, so long as the rules so made are within the provisions of the charter and in consonance with the fundamental principles thereof. (*Mitchell* v. *McKevitt,* 128 Cal. App. 458 [17 Pac. (2d) 789].)

■ A civil service commission derives its powers from the charter creating it and may not exercise any not directly given or necessarily implied from those conferred. Rules adopted by a commission have the force of law if they are within the powers conferred upon the commission by the charter. (*Haub* v. *Tuttle,* 80 Cal. App. 561 [251 Pac. 925].)

A rule within the scope of its application has the force and dignity of a law, but since the board owes its existence to the organic instrument it cannot, under the guise of exercising a rule-making authority, alter the instrument which has created it.

■ Counsel for appellants would uphold the rule of the board that no one may be examined unless he has twelfth grade standing or its equivalent, first, upon the ground that section 73 confers upon the board the power to make rules, to carry out the purposes of the article and for examinations, appointments and promotions, so that any rule that it might make would have the force of law, even though it would seem to go beyond a power directly conferred by the charter. They contend that there is an analogy between the instant case and that illustrated in *State ex rel.* v. *Covington,* 29 Ohio St. 102, where it is held that a legislative act may add to the qualifications established by the state Constitution. To their argument, there is the double answer that the position announced in the case last referred to, is contrary to the general rule as the same is laid down in the following cases: *State ex rel.* v. *Holman,* 58 Minn. 219 [59 N. W. 1006]; *Gibbany* v. *Ford,* 29 N. M. 621 [225 Pac. 577]; *State ex rel.* v. *Howell,* 104 Wash. 99 [175 Pac. 569]; *McCool* v. *State ex rel.,* 149 Miss. 82 [115 So. 121]; further, section 73 does not purport to confer upon the board the power assumed for it by appellants, because it confers upon the board the power merely to make rules regulating the method of such examinations, and the rule, the adoption of which precluded the taking of an examination in this case, had nothing to do with the method of an examination, but rather was one the application of which was a denial of the privilege of competing in an examination.

The question discussed in the briefs, as to whether the clause "able to read and write the English language", as found in section 88, establishes the minimum or maximum educational qualification for admission to the police department, would perhaps be of significant interest if section 88 of the charter stood alone and contained the only educational qualification. When, however, it is read in connection with section 74, it becomes apparent that, without regard to definitions by lexicographers or found in cases, it is an expression of elasticity and must be held to mean the ability to read and write English with sufficient understanding and comprehension "to discharge the duties of the positions to which they seek to be appointed", in this case sufficiently understandingly to be a police officer.

In the case of *Helton* v. *Burdette,* 180 Ky. 492 [203 S. W. 189], it is held that ability to read as a voting qualification must be tested by sentences composed of words in common use and of average difficulty; while in *Williams* v. *Hays,* 175 Ky. 170 [193 S. W. 1046], it is held that ability to read as a voter's qualification is demonstrated if the voter can read, in a reasonably intelligent manner, sentences composed of words in common use and of average difficulty, although each word need not be accurately pronounced, and the voter's ability to write is manifested if he can by use of alphabetical signs express, in a fairly legible way, words in common use and of average difficulty though each word may not be accurately spelled.

These cases, however, by reason of the provisions of section 74 of the charter, on civil service, do not confine the Civil Service Board within the limits of the definitions therein contained, and that board has a wide discretion necessarily in determining, first, what standard will satisfy the requirement that he read and write well enough to discharge the duties of a police officer, and, second, whether after examination, the applicant has measured up to the standard, and it has been held in this state that courts are reluctant to review the markings of commissions. (*Mitchell* v. *McKevitt, supra.*)

Therefore, it is concluded that when sections 73 and 74 are read with section 88, in the light of the foregoing principles, that a civil service board has transgressed its authority and has, in effect, adopted a rule amendatory of the charter by

denying one the right to take an examination which will practically and fairly test his fitness to become a police officer, by adopting the standard that he may not compete unless he presents a twelfth grade certificate or evidence that his education bespeaks such ability as that certificate may be held to indicate.

There is no case cited by appellants which goes to the length of holding that a commission, by the adoption of a standard such as the one here in question, may foreclose the right of examination, at least where charter provisions are similar to those found in that of the city of Oakland.

■ Appellants complain that the trial court committed error in excluding evidence offered below to show the reasonableness of the construction placed upon the clause "able to read and write English" as the equal to completion of twelfth grade, or its educational equivalent, the evidence consisting of an offer to prove that a large percentage of those who had in the past failed in written examinations were persons whose education was not that of completion of twelfth grade or its equivalent. Another assignment of error is the exclusion of the testimony of August Vollmer, former police chief of Berkeley, for the purpose of showing the reasonableness of the board's rule. Apparently with the same view excerpts from the Wickersham report to the President of the United States were offered, and excluded.

There is no error in these rulings for the reason that neither the testimony of witnesses nor of the facts sought to be introduced could aid the court in determining the question of law: Had the Civil Service Commission the right, under the guise of making a rule for carrying out the purposes of the article on civil service, to exclude one from competing in order that his fitness be practically and fairly tested by examination?

Appellants contend that the rules of the Civil Service Board are given the force and effect of law. (*Timmins* v. *Civil Service Commissioners,* (1931) 276 Mass. 142 [177 N. E. 1, 75 A. L. R. 1232].) And, further, that they have the same force as provisions of the charter, citing *Mitchell* v. *McKevitt, supra.* The last case, as has been seen, holds, however, that they have the same force when they are within the provisions of the charter, and the Timmins case must be read in the light of the qualification placed upon the rule-making power by the

case of *Mitchell* v. *McKevitt, supra,* and, if it goes beyond the latitude given a commission by the McKevitt case, it would not control in this state.

The facts of the Timmins case are that the position of director of school of hygiene became vacant. The school committee requested the Civil Service Board to hold an open competitive examination to create an eligible list from which the school committee might fill the vacancy. The commissioners, ignoring the request for an open competitive examination, gave notice of a promotional competition, limiting the applications to persons then in the department. The petitioner and several others applied to take the examination. Only the petitioner appeared at the time and place fixed. He was told that no examination would be held. Later the commission announced an open competitive examination. Petitioner contended that the board had no right to refuse to examine him, nor to order an open competitive examination, without having first held an examination limited to the school physicians of Boston. The court held that for many years the commission had given such examinations, promotional or open, as the appointing power had requested it to do, but that in this case no definite statutory rule controlled the action of the civil service commission, the statute requiring that the rules of selection should include "promotions, if practicable, on the basis of ascertained merit in the examination and seniority of service", but that no rule existed by statute requiring positions to be filled by promotions except in the police service. In a word, the case involved a question of construction of the statute of the state of Massachusetts not *in pari materia* with the provisions of the charter of Oakland.

In brief it appears that the rule under criticism is not adapted to "carry out the purposes of this article" (civil service) ; it constitutes an unwarranted addition thereto.

For the foregoing reasons, the judgment is affirmed.