[S. F. No. 15316.  In Bank.—December 24, 1934.]

WILLIAM C. WALLACE, Petitioner, v. BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA et al., Respondents.

C. W. White for Petitioner.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakly and Robert H. McCreary, Deputies District Attorney, for Respondents.

Jesse G. Benson, Wm. J. Locke, Frederick Dubovsky and James P. Montgomery, as *Amici Curiae* on Behalf of Respondents.

SHENK, J.—This proceeding in *mandamus* is submitted on a general demurrer to the petition filed as a return to the alternative writ. The purpose of the petition is to compel the respondent Board of Supervisors of Alameda County to take no action with reference to calling an election of a board of freeholders to prepare and propose a charter for a consolidated city and county government as prayed for in an initiative petition.

On October 22, 1934, the initiative petition was filed with the county clerk praying that an election be called for the purpose of electing said board of freeholders. The petition

was found to have been sufficiently signed by qualified electors of the county and a special election will be called, and the expense thereof incurred for the purpose intended, unless it is the duty of the respondent board to disregard the petition.

The proponents of the petition for the election have proceeded, as noted in the petition, "pursuant to section 7½a of article XI of the Constitution", and the only question presented is whether it is competent for the petitioning electors or the board to proceed under that section when properly construed and in the light of the following facts:

Prior to January 18, 1927, Alameda County was organized under general law. On that date a charter for the county, prepared, proposed and adopted under the authority of section 7½ of article XI of the Constitution, was ratified by the legislature. (Stats. 1927, p. 2029.) While the county was so organized and operating under general law, section 7½a of article XI was added to the Constitution in 1918. That section provides in part: "Any county organized under general law, and having, at the time this section takes effect, a population of two hundred thousand inhabitants or over . . . and having within its territorial boundaries one or more incorporated cities or towns, may frame a charter for a consolidated city and county government, by causing a board of fifteen freeholders . . . to be elected by the qualified electors of said county, at a special election." Then follow in some fifteen pages (Stats. 1917, pp. 1921–1936), the procedure for the adoption of such a charter and a recital of what it is competent to incorporate therein.

The foregoing section of the Constitution is couched in general terms and on its face is available to any county as to which the prerequisites exist, namely, (1) a county organized under general law; (2) having in 1918 a population of 200,000 or over; and (3) having within its boundaries one or more incorporated cities or towns.

The proposition submitting the measure to the voters at the election held November 5, 1918, stated that the proposed section 7½a of article XI of the Constitution provided for "Organization within county of consolidated city and county government" and "authorizes any county having a population of 200,000 or more, not a consolidated city and county nor operating under any county charter, to frame

charter for consolidated city and county government.'' In the argument in favor of said amendment sent to the voters prior to the 1918 election, it was stated that this amendment was proposed by the legislature at the request of Alameda County, and that ''it applies solely to Alameda county and does not affect any other county in the state. San Francisco and Los Angeles counties are both exempted from its operation by reason of their operation under freeholders' charters. Other counties are excepted by reason of their population.''

After the adoption of this amendment in 1918 and prior to 1926 proceedings were taken in Alameda County to adopt a charter under the authority thereof, but the proposed charter failed of adoption because of an adverse vote at the polls.

Thereafter, in 1926, a freeholders' charter for Alameda County was proposed and adopted by the electors of the county pursuant to section 7½ of article XI of the Constitution (added in 1911 and amended in 1914), and this county charter was, as above stated, ratified by the legislature in January, 1927. Since that date the county has been organized and is operating under said county charter. Under section 7½ a county charter adopted thereunder ''may be surrendered and annulled with the assent of two-thirds of the qualified electors of such county, voting at a special election, held for that purpose . . . and, in the event of the surrender and annulment of any such charter, such county shall thereafter be governed under general laws in force for the government of counties''.

There are at least two sufficient reasons why the county of Alameda may not now avail itself of the authority granted by said section 7½a. The first is that; as to said county, one of the three prerequisites above mentioned is absent, namely, the requirement that the county availing itself of the authority granted by said section be a county organized under general law; whereas, the county of Alameda since 1927 has been organized under a freeholders' charter. Counsel for the respondents concede the absence of this prerequisite, and apparently recognize the fatal effect of its absence on the proceedings pending before the respondent board, but *amici curiae* on behalf of the respondents urge that the constitutional language is susceptible of

the construction that if all three conditions were present when section 7½a was added to the Constitution, the electors of the county could at any time thereafter proceed thereunder notwithstanding the fact that the county might thereafter, as here, be organized as a charter county under another section of the Constitution. Section 7½a cannot be so read. There is no such limitation as to the first requirement. The language plainly means that when the authority of the section is sought to be invoked the only county qualified to invoke the same is a county then organized under the general law. The limitation as to population, as of the time when the amendment went into effect, is in line with the declared purpose to make the amendment when effective applicable only to Alameda County, as that county was then the only county in the state other than charter counties, which had a population of 200,000 or over.

The second reason is that by the adoption of a county charter in 1926, and the ratification thereof by the legislature in 1927, the county of Alameda removed itself from the constitutional classification of those counties to which, on the face thereof, the constitutional amendment was made applicable. As stated, the authority of the section was invoked by the county while it was organized under general law, but the effort failed. It then effectually organized under a charter, pursuant to section 7½, which section contains within itself the method by which such a charter may be surrendered and annulled, that is, with the assent of two-thirds of the electors of the county voting at a special election called for that purpose. To permit the new charter proceeding to go forward would, if carried to completion, be tantamount to the surrender and annulment of the present county charter in a way not authorized by the Constitution.

Some of the *amici curiae* call attention to the fact that the last paragraph of section 7½ contains a provision that said section shall not "apply to any consolidated city and county, organized as such at the time this section takes effect; nor shall the provisions of this section apply to any county which, at the time this section takes effect, had adopted a freeholders' charter, and was organized and operating under such freeholders' charter." From this language it is argued that it was intended that any county

which was not organized and operating under any such charter when the section took effect could thereafter avail itself of said section, notwithstanding the fact that in the meantime such county had organized under a special charter under section 7½. The argument is unavailing. The first prerequisite is plain and unambiguous and must be held to be operative when the authority of the section is invoked. Furthermore, the language of the last paragraph of section 7½a was but a further assurance that the proposal for its adoption was limited to Alameda County alone and was not intended to disturb charter counties organized under other sections of the Constitution. ▇ *Amici curiae* further insist that, assuming the difficulties encountered in proceeding under section 7½a to be insuperable, still section 7 and paragraph 4 of section 8½ of article XI contain provisions authorizing a consolidation of city and county governments, and that if section 7½a is not now available to the electors of the county, the authority granted by sections 7 or 8½ is available to effectuate the purposes of the electors whose names are signed to the petitions now before the respondent board. A conclusive answer to this contention is that said petition specifically sets forth that the proceedings contemplated thereby were taken and the election is demanded pursuant to the authority granted by section 7½a; and we find no right anywhere granted to the board to switch from the procedure definitely taken under one section of the Constitution, with the attendant details then required to be followed, to the procedure entirely different in plan and effect, provided for in another section of the Constitution.

Let the peremptory writ issue as prayed.

Waste, C. J., Curtis, J., and Langdon, J., concurred.