[S. F. No. 17861. In Bank. Mar. 4, 1949.]

SANTA CLARA COUNTY et al., Petitioners, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY et al., Respondents.

Howard W. Campen, County Counsel, and Harry C. Nail, Jr., Deputy County Counsel, for Petitioners.

J. H. Machado and J. B. Peckham for Respondents.

SPENCE, J.—Petitioners seek a writ of prohibition to restrain the respondent court from proceeding further in connection with a "temporary restraining order and order to show cause" issued in an action commenced for the purpose of preventing the Board of Supervisors of Santa Clara County from certifying to the Legislature a proposed freeholders' charter adopted by the voters of that county. Respondents filed a demurrer and answer to the petition, but the material facts, for the purpose of this discussion, are not in dispute and their brief recital will suffice to present the problem at hand. It appears that in pursuance of section 7½ of article XI of the Constitution, the Board of Supervisors of Santa Clara County made publication of the proposed charter prepared by the duly elected freeholders; that thereafter at the general election on November 2, 1948, a majority of the voters approved said charter; and that in consequence of such favorable vote, the board of supervisors proposed forthwith to submit the charter to the Legislature at the current session "for its approval or rejection as a whole." To prevent the taking of this final step in the prescribed proceedings, one Albert J. Levin, a taxpayer and voter in the county, filed an injunction action against petitioners in the respondent court. The complaint was premised upon the charge that the publication of the proposed charter was defective in the light of the constitutional requirements, and it therefore was not validly submitted to the voters at the general election for ratification. A "temporary restraining order and order to show cause" was thereupon issued. Petitioners demurred to the complaint in the respondent court, and then applied to this court for a writ of prohibition "commanding" respondents "to immediately cease and desist from any further proceedings" in the said injunction action "other than to dissolve [the] restraining order and . . . to discharge [the] order to show cause."

It is petitioners' position that the issuance of an injunction in the pending action in the respondent court would be "beyond the jurisdiction of respondents" as constituting an act of judicial interference with the legislative process. Petitioners further maintain that although the correctness of such injunction would be reviewable upon appeal, such remedy

would not be adequate because of the time element here involved in that: (1) they are required to certify the proposed freeholders' charter to the Legislature during the current session; (2) failure so to do "will render said proposed charter null and void and of no consequence whatever"; and (3) therefore "the submission of [said] charter to the legislature could be defeated by an adjournment sine die thereof pending the appeal"—considerations which leave "no doubt as to the propriety of this court's assumption of original jurisdiction." (*Glide* v. *Superior Court of the County of Yolo*, 147 Cal. 21, 27-29 [81 P. 225]; *Reclamation District* v. *Superior Court of Sutter County*, 171 Cal. 672, 683 [154 P. 845].) Careful analysis of the problem presented compels the conclusion that petitioners are entitled to the relief here sought.

Unquestionably, it must be recognized that our Constitution (art. I, § 22) makes its provisions "mandatory and prohibitory, unless by express words they are declared to be otherwise"; that this declaration applies to all sections of our Constitution alike, and every one subject to its mandate —county authorities as well as departments of the state government—must comply. So it was stated in *Blanchard* v. *Hartwell*, 131 Cal. 263, at pages 264-265 [63 P. 349], that the "procedure" for the adoption of a freeholders' charter "was, under constitutional provisions, expressly declared to be mandatory and prohibitory, . . . that such mode is exclusive . . . one mode . . . is commanded, and all other are prohibited." (See, also, *People* v. *City of San Buenaventura*, 213 Cal. 637, 640 [3 P.2d 3].) But in pursuing the prescribed procedure for preparation of the charter and submitting it to the voters for ratification as precedent steps to its certification to the Legislature for "approval or rejection," the board of supervisors was acting as an arm or agent of the Legislature in accomplishing part of the legislative process. Accordingly, as petitioners maintain, "judicial interference [therewith] by injunction" would "encroach" upon their "legislative, governmental and political functions" as county officers in undertaking to perform the duties imposed upon them by the Constitution for effectuating final action by the Legislature whereby the proposed charter would either be accepted and passed into a law or rejected, as it should see fit. (See *Fragley* v. *Phelan*, 126 Cal. 383, 403 [58 P. 923] [concurring opinion].) From this aspect of petitioners' acts being in conformity with the mandate of the Constitution—the state

organic law—the present case involves considerations similar to those where an injunction has been declared improper if it would operate to "prevent the execution of a public statute by officers of the law for the public benefit." (Code Civ. Proc., § 526, subd. 4; Civ. Code, § 3423, subd. 4; *People ex rel. Attorney General* v. *Board of Supervisors of Shasta County*, 75 Cal. 179, 181 [16 P. 776]; *Wright* v. *Jordan*, 192 Cal. 704, 710 [221 P. 915].)

In *Taylor* v. *Cole*, 201 Cal. 327 [257 P. 40], the nature of the proceedings for the adoption of "charters and amendments to charters" was fully discussed, and it was declared at page 334 that "the ratification and promulgation of . . . charter amendments had all the essence of a plain legislative enactment." Accordingly, the recital in the preamble of the Legislature's concurrent resolution registering its approval was deemed conclusive on the question of "whether or not mandatory jurisdictional steps were followed in the election which indorsed and proposed [the] charter amendments." (P. 333.) Such view coincides "with the central idea of the Constitution in prescribing the independence and equality of the three great departments of the state." (P. 338.) In so recognizing the whole proceeding as within the domain of the legislative branch of our state government (Const., art. III, § 1), the court pertinently continued at page 338: ". . . the constitution placed upon the legislature the plain duty of seeing that the proceedings by which the charter amendments were proposed were regular in all respects. If jurisdictional defects existed, it was the duty of the legislature to reject the documents tendered as a whole and withhold ratification. The legislature saw fit to accept the certificate of the defendant board and such other evidence as it may have taken and its conclusion that the election was regular is not open to question in court proceedings, at least in the absence of fraud."

Such analysis of the scope of the legislative process was recognized in *Taylor* v. *Cole*, at page 334, to be directly "in conflict with the pronouncement . . . in the early case of *People* v. *Gunn*, 85 Cal. 238, 248 [24 P. 718]" where it was stated that "the municipal authorities and [the] people" rather than "the legislature" were the "law-makers" insofar as the adoption of a charter was concerned, and therefore the "regularity" of the proceedings was a "judicial question, the determination of which belonged to the judicial [not the legislative] department of the government." It was the theory of the Gunn case that the Legislature's passage of a concurrent

resolution in approval of a freeholders' charter after adoption by vote of the people should be distinguished from its passage of a statute by bill, upon the premise that in the former case the Legislature was not exercising the law-making power in the same sense as in the latter when it enacts a statute upon a subject entirely within its power, carrying with it "the presumption of regularity in what had gone before." On that point of distinction — that a freeholders' charter "approved" by the Legislature does not have the same dignity and force as a law it directly enacts—the Gunn case was expressly overruled in *Taylor* v. *Cole* as out of line with settled legal principles resting upon the integrity of the legislative department as a coordinate branch of our state government, entitled to function within its domain without interference by the courts. (*Taylor* v. *Cole, supra,* pages 334-338, and cases there cited; in accord, see *Whitmore* v. *Brown,* 207 Cal. 473, 481 [279 P. 447]; *Allen* v. *City of Los Angeles,* 210 Cal. 235, 239 [291 P. 393]; *People* v. *City of San Buenaventura, supra,* 213 Cal. 637, 640; *Bruce* v. *Civil Service Board of City of Oakland,* 6 Cal.App.2d 633, 636 [45 P.2d 419]; *Yosemite Portland Cement Corp.* v. *State Board of Equalization,* 59 Cal. App.2d 39, 42-43 [138 P.2d 39].)

While the courts have jurisdiction under certain circumstances to determine whether mandatory steps leading to the adoption of a freeholders' charter have been followed, the timeliness of such judicial inquiry is a significant factor. So in *People* v. *City of San Buenaventura, supra,* 213 Cal. 637, *after* the legislative process was at an end and the charter had gone into effect as a part of "the law of the State," its validity was successfully attacked by *quo warranto* proceedings because an essential step as to its advertising prior to submission to the voters for adoption appeared, on the face of the Legislature's "approving" resolution, not to have been taken. But that situation is distinguishable from this case, where judicial relief through injunction is sought while the legislative process is still uncompleted and in interruption of the procedure prescribed by the Constitution as within the law-making department of our state government. As the problem here thus narrows itself, it becomes a question of whether the respondent court has acted and is acting in *excess of its jurisdiction* in granting the temporary restraining order in prevention of petitioners' performance of their duty to submit the charter to the Legislature in culmination of the charter proceedings as undertaken by them.

■ It is true that the courts have interrupted the legislative process in pursuance of what would be a void measure in any event, where there has been a showing of these equitable considerations in justification of the judicial relief sought: (1) threatened or actual irreparable injury to the taxpayer or general public by the substantial waste of public funds in undertaking further prescribed steps; and (2) the absence of any other adequate remedy to prevent such waste or loss. Thus, in *Harnett* v. *County of Sacramento*, 195 Cal. 676 [235 P. 445], an injunction was properly granted to restrain the holding of a county initiative election where it appeared that such proposed procedure "would be a waste of the public money of the county . . . and an improper and illegal expenditure thereof" in that "even if the [measure] were adopted by the electors, it would be a nullity" as being contrary to state law and beyond the power of the county as a legislative body. (P. 679.) In considering "the point that an injunction cannot issue to restrain a legislative act," the court pertinently stated at pages 682-683: "It is true that courts will not enjoin the passage of an act by the legislative body solely upon the ground that it will be a void enactment, nor as a general rule will they interfere with the holding of an election when the election is provided for by a valid law and the forms prescribed by that law have been complied with by the authorities. Nevertheless, there are exceptions to these rules. For example . . . [w]here it is proposed to hold an election for the submission of a measure to the popular vote, and that measure will be wholly void and inoperative even if adopted by the people, the courts may, at the instance of a resident taxpayer, enjoin the holding of the election upon the ground that it will be a useless expenditure and waste of public funds (Code Civ. Proc., sec. 526a.) There is no other adequate remedy for the protection of the rights of the taxpayers in such a situation and political rights are not curtailed. The present situation obviously merits the relief sought." Upon the same principle an injunction was granted in *Livermore* v. *Waite*, 102 Cal. 113 [36 P. 424, 25 L.R.A. 312], to restrain the holding of a state election on a constitutional amendment passed by the Legislature and referred to the people but which, because of its defective terminology, would be "ineffective in accomplishing [the desired] change" even if approved by the people. (P. 122.)

Similarly, in *Wallace* v. *Board of Supervisors of County of Alameda*, 2 Cal.2d 109 [39 P.2d 423], a mandamus pro-

ceeding, the timeliness of the application for judicial relief with regard to contemplated charter procedure appears significantly. There, with the record showing that the county in question did not meet the conditions specified in the Constitution (art. XI, § 7½a) as prerequisite for organization therein of a consolidated city and county government, a writ of mandate was issued to "compel the respondent [board] to take no action with reference to *calling an election* of a board of freeholders" to pursue charter proceedings under the authority of the cited constitutional provision. (Emphasis added.)

But here no like conditions prevail in justification for judicial interference with the legislative process. The county's expenditures with regard to the challenged charter proceedings—such as the special freeholders' election, the publication of the charter, and whatever proportion of the overall expense of the general election procedure would be assignable to placing the additional measure on the ballot have all been made. The only step which now remains to be taken in completion of the legislative process is the petitioners' certification of the charter to the Legislature for its "approval or rejection." Manifestly, such final act not only necessitates no further expenditure of public funds—any more than would the passage by the Legislature of any one of its ordinary bills, whether valid or invalid—but in no sense does it involve any expenditure of the money of the county "taxpayer." Thus, unless and until the Legislature approves the charter in question and an attempt is made to put it in effect, there can be no showing at all of the essential equitable considerations in support of the granting of injunctive relief—no threatened injury to the public or to any taxpayer which would derogate from the propriety of the completion of the legislative process, without interference, in the orderly manner prescribed by the Constitution as a matter within the domain of the legislative department of our state government. If the charter should be approved and so become a part of the state law, then the sufficiency of petitioners' acts, in the light of the constitutional requirements as to the mandatory steps to be pursued, may be tested by some appropriate proceeding. (*People* v. *City of San Buenaventura, supra,* 213 Cal. 637, 642; *cf. Johnston* v. *Board of Supervisors of Marin County,* 31 Cal.2d 66, 71 [187 P.2d 686].)

From the foregoing observations it necessarily follows that "the temporary restraining order and order to show cause"

should not have been issued, and there now remains the question of the availability of the relief here sought by petitioners.

■ The writ of prohibition is an appropriate remedy to arrest the proceedings of a court "when such proceedings are without or in excess of the jurisdiction" of such court (Code Civ. Proc., § 1102) and "where there is not a plain, speedy, and adequate remedy in the ordinary course of law" (Code Civ. Proc., § 1103). Here the respondent court had "jurisdiction over the subject matter and the parties in the fundamental sense" (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]), but its particular injunctive act in interference with the legislative process—contrary to the accepted doctrine of the separation of powers inherent in our tripartite form of government (Const., art. III, § 1)— was unauthorized and so "in excess of its jurisdiction." (*Evans* v. *Superior Court of City and County of San Francisco,* 14 Cal.2d 563, 580 [96 P.2d 107]; see, also, *Rodman* v. *Superior Court of Nevada County,* 13 Cal.2d 262, 269-270 [89 P.2d 109]; *Fortenbury* v. *Superior Court of Los Angeles County,* 16 Cal.2d 405, 407-408 [106 P.2d 411]; *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, 287-290.) Moreover, as the exigencies of the time limitations governing the effectiveness of petitioners' proposed submission of the charter to the Legislature at the current session were hereinabove noted, the remedy by appeal, if the injunction were granted in the taxpayer's suit, would not be adequate under the circumstances. The "restraining order" is of a continuing nature and the fact that it has already been issued does not nullify the propriety of petitioners' application for a writ of prohibition to prevent the respondent court from proceeding further in connection therewith. (*Evans* v. *Superior Court of City and County of San Francisco, supra,* 14 Cal.2d 563, 580-581.)

Let the peremptory writ issue as prayed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

Plaintiff in the respondent court brought an action to restrain the county board of supervisors from submitting a county charter to the Legislature for approval. His basis for that relief was that the board had not complied with the constitutional requirement that the charter be published (Cal.

Const., art. XI, § 7½), in that the publication was fatally defective. It must be conceded that such defect was fatal to the proper adoption of the charter. The trial court granted a temporary restraining order in accordance with plaintiff's request. The board in this proceeding seeks by *prohibition* to restrain the trial court from enforcing the temporary restraining order.

The majority opinion is contradictory, inconsistent and unsupportable. It consumes several pages discussing the power of the court to interfere with the "legislative process," but does not base its conclusion that the restraining order should not have been granted, on that ground. It then shifts to the proposition that a court will interfere with the "legislative process" where otherwise irreparable injury will result and there is no other adequate remedy. *On that basis, and that basis alone,* it finally concludes that the temporary restraining order here should not have been granted. An erroneous act of the trial court in granting the order, insofar as those factors are concerned, is nothing more than *an error at law.* Therefore, there is no *jurisdictional* question that may be tested by *prohibition.* But to get around that obvious barrier, the majority shift back to the proposition discussed in the first part of the opinion—that a court cannot interfere with the "legislative process" and, therefore, when it purports to do so it acts in excess of its jurisdiction and prohibition will lie—a proposition which the majority concede is not a ground for refusal of an injunction in a proper case. All the trial court is deciding, is whether it is one of those proper cases involving interference with the "legislative process," a question which it has *jurisdiction* to decide rightly or wrongly, hence prohibition is not available.

Turning to the merits of the controversy, the authorities are in hopeless contradiction. The main case, after the old case of *People* v. *Gunn,* 85 Cal. 238 [24 P. 718], dealing with the nature and scope of the authority of the Legislature to approve or reject a charter, was *Taylor* v. *Cole,* 201 Cal. 327 [257 P. 40]. In that case the attack on the ordinance was made *after* the *Legislature* had approved the charter. The charter had not been published as required by the Constitution, yet the court held, overruling *People* v. *Gunn, supra,* that the *approval by the Legislature constituted a final and conclusive determination that there were no unconstitutional irregularities in the adoption of the charter, and therefore the court lacked authority to examine the proceedings.* In

other words the court held that the Legislature could override a *constitutional* requirement and it was beyond the power of the courts to interfere—a doctrine manifestly at odds with established law. The court said at page 338: "In the case before us, the constitution placed upon the legislature the plain duty of seeing that the proceedings by which the charter amendments were proposed were regular in all respects. If jurisdictional defects existed, it was the duty of the legislature to reject the documents tendered as a whole and withhold ratification. The legislature saw fit to accept the certificate of the defendant board and such other evidence as it may have taken and *its conclusion that the election was regular is not open to question in court proceedings,* at least in the absence of fraud." (Emphasis added.) If that is the law, that is the end of the case at bar, for the *Legislature, not the courts, has exclusive jurisdiction* over whether there has been a compliance with the constitutional requirements. Therefore, the writ of prohibition would lie. Although cases subsequent to the Taylor case are wholly inconsistent with it, yet the majority see fit to perpetuate the confusion by quoting with approval from the Taylor case, and also the later cases. In *People* v. *City of San Buenaventura,* 213 Cal. 637 [3 P.2d 3], it was held that a charter could be voided by the courts for constitutional defects in the proceedings even though the Legislature approved it. The only difference between that case and the Taylor case was that in the San Buenaventura case the legislative resolution of adoption showed the defects, but as pointed out by Mr. Justice Langdon, in his dissenting opinion, that should make no difference. *Thus under the San Buenaventura case the legislative approval is not conclusive and final.* Yet the majority cite both of these decisions with approval. Later, in *Butters* v. *Board of Supervisors,* 217 Cal. 515 [19 P.2d 983], and *Ault* v. *Council of City of San Rafael,* 17 Cal.2d 415 [110 P.2d 379], this court entertained proceedings *before* the charter was submitted to the Legislature and cited the San Buenaventura case with approval.

The law is settled, therefore, I take it, that the Legislature does not have exclusive jurisdiction to determine whether the constitutional procedure has been followed in the adoption of a charter. The courts may declare the charter invalid for failure to comply with the constitutional requirements. This is tacitly admitted by the majority, for after it finally gets down to the meat of the case, that is, that equity may restrain the continuation of the procedure for the adoption of a

562

charter for failure to follow the required steps, where, as the majority opinion puts it, there is "(1) threatened or actual irreparable injury to the taxpayer or general public by the substantial waste of public funds in undertaking further prescribed steps; and (2) the absence of any other adequate remedy to prevent such waste or loss," it then proceeds to determine that there is no irreparable injury, and there is another adequate remedy, and for those reasons the trial court *should not have issued the restraining order*. In other words, *the proper equitable considerations were lacking for giving injunctive relief*. But how does that go to the jurisdiction of the court and hence justify prohibition? Those are the very things decided in every injunction case—that the court has jurisdiction to decide correctly or incorrectly. Any error is merely one of law—not jurisdictional. And in that connection I desire to point out that there is a *sound* ground for prohibition and that is that a *constitutional question is involved*. (See *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460 [171 P.2d 8].)

The court below based its issuance of the temporary restraining order on the verified complaint wherein it was alleged: ". . . that before such election it was the duty of said Board of Supervisors to cause said proposed charter to be published for at least ten times in such a newspaper, and accordingly said Board ordered such a newspaper to publish said proposed charter for such a number of times; *that said newspaper failed to publish said proposed charter any greater number than five times before such election; and no such publishing for ten times was made in any such newspaper. . . .*" The trial court accepted that allegation as true and we cannot do otherwise. We must accept as a fact that the *constitutional publication requirements were not met*. Hence the application for a writ of prohibition must be denied. It is not important whether the case was a proper one for equity action—that is a matter for the trial court to decide, erroneously or rightly. It does not go to its jurisdiction. The only jurisdictional question is whether the *Constitution* was complied with. The plaintiff in the superior court action alleged, and that court decided, that the board of supervisors had not so complied, and, therefore, the trial court has jurisdiction, and the writ should be denied.

Conceding, for the sake of argument only, that the courts have no jurisdiction to interfere with a proceeding for the legislative approval of a charter after the same has been

approved by the electorate, even though there are jurisdictional defects in the proceedings, a practical problem is presented which should appeal to the reason and common sense of those who are seeking to have the charter approved. Should the Legislature, as it did in the San Buenaventura case, *supra,* see fit to expose the jurisdictional defect in adopting the resolution approving the charter, then even under the reasoning of the majority in this case, the charter could then be successfully attacked by a quo warranto proceeding. In other words, under the theory of the majority, even though jurisdictional defects exist in the proceedings for the adoption of the charter, these defects can not be treated in the courts after the election at which the charter is approved and before the final approval of the charter by the Legislature, but may be tested in the courts after the Legislature has finally given its approval. If any sound reason exists for such an absurd doctrine, it has not been made apparent in the majority decision in this case. It would seem more in harmony with considerations of public policy that jurisdictional defects in such a proceeding be tested at the earliest possible moment, to the end that when the charter is finally approved and ready to be put into operation, its validity can no longer be the subject of successful attack in the courts. The problem, as I see it, is whether the Legislature or the courts should be the ultimate arbiter of any issue relative to compliance with constitutional requirements throughout the entire proceedings for the adoption of a county or municipal charter. If the power to pass upon this issue is exclusively legislative, then, of course, the courts have no power in that field. On the other hand, if the interpretation of the Constitution and its application to such proceedings is for the Judicial Department of the state, then, it seems to me, that this power should be exercised when, at any stage of the proceedings, it is plain that a jurisdictional defect has occurred because of failure to comply with the constitutional requirements. The majority in this case purport to seize both horns of the dilemma. They say that it is both legislative and judicial. In so holding, they become immeshed in a mass of conflicting rules of both procedural and substantive law which results in confusion worse confounded.

In my opinion, the determination of whether or not the constitutional requirements have been met in a proceeding of this character is clearly judicial, and such an issue may be tested in the courts at any stage of the proceedings. It

must necessarily follow that the trial court had jurisdiction in this case to grant the temporary restraining order, and the application to this court for a writ of prohibition should therefore be denied.

SCHAUER, J.—I concur in the conclusion reached by Justice Carter.

I believe that the question as to whether mandatory constitutional requirements have been met is essentially judicial in character and that the so-called "legislative process" theory has no application when relief is sought, as here, before the proposed legislation actually reaches the Legislature and upon the ground that there is no constitutional basis on which such proposed legislation *can* reach or be acted on by the Legislature. In such a case the procedure is not truly legislative; it cannot result in valid legislation; the Legislature acquires no jurisdiction to pass on the measure.

The majority suggest that the "legislation," if enacted, can be declared void. If it is void it will be so solely because the constitutionally prescribed legislative process—the basis for that process—was not followed. If the legislative process is not being followed—if the act in question is merely an idle one, completely sterile because it is beyond the legislative process and can furnish no base for that process—why should it not be enjoined?

Respondents' petition for a rehearing was denied March 31, 1949. Carter, J., and Schauer, J., voted for a rehearing.