[Civ. No. 31483. First Dist., Div. Three. Feb. 27, 1973.]

PEOPLE'S LOBBY, INC., et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SANTA CRUZ COUNTY,
Defendant and Respondent.

## COUNSEL

Roger Jon Diamond for Plaintiffs and Appellants.

Howard E. Gawthrop, County Counsel, and Clair A. Carlson, Chief Deputy County Counsel, for Defendant and Respondent.

## OPINION

**CALDECOTT, J.**—This is an appeal from an order of the Superior Court of Santa Cruz County denying a petition for writ of mandate that would have required the respondent board of supervisors to place a proposed initiative ordinance on the ballot.

The appellants, People's Lobby, Inc., and certain named individuals, circulated a petition entitled "An Ordinance Protecting the Coastal Environment of Santa Cruz County."[1] Sufficient signatures were collected to place

---

[1] The proposed ordinance provides in part:

"SECTION 1: A new ordinance is hereby added to the Santa Cruz County Code to read as follows: . . .

4. The area lying within one mile of the mean high tide is hereafter restricted to:

A. The art or science of cultivating the ground including harvesting of crops and rearing and management of livestock; tillage, husbandry farming; horticulture; and forestry. The following uses shall be the only uses permitted with respect to agriculture:

1. One-family dwellings not to exceed one dwelling for each ten (10) acres of total site area; the premises, fruit packing, drying and storage sheds; barns, stable, and other farm outbuildings.

3. Drying, packing, or other processing of an agriculture commodity performed on the premises where it is produced.

4. Stands for the display and sale of agriculture commodities.

5. Living quarters accessory to the main dwelling unit (for persons employed on the premises and relatives of the property owner) limited to a maximum of five such accessory units or one such living unit for each ten (10) acres of total site area, whichever is less.

6. Facilities for fish and wildlife enhancement and preservation.

B. Recreation uses. As used in this Ordinance, recreation means any activity, volun-

the initiative on the ballot and the county clerk so certified. The Board of Supervisors of Santa Cruz County, a general law county, refused to place the initiative on the ballot.

It is the appellants' contention that potential invalidity of an initiative measure is no reason to deny it a place on the ballot and that the proposed initiative could have been denied a place on the ballot only if the governmental entity (speaking through the electorate) had no authority or jurisdiction to enact such a measure. Appellants apparently claim that if the proposed initiative is within the governmental entity's field of authority or jurisdiction, but for other reasons invalid, it should appear on the ballot.

There is considerable confusion as to whether or not a county or municipal official can refuse to place a qualified initiative on the ballot on the

---

tarily engaged in, which contributes to the education, entertainment, or physical, mental, cultural, or moral development of the individual or group attending, observing, or participating therein; and includes any activity in the fields of music, drama, art, handicrafts, science, literature, nature study, nature contacting, aquatic sports, public parks, playgrounds, swimming pools, hiking and riding trails, golf courses, bicycle trails, boating, swimming, fishing, tennis and volleyball courts. Amusement centers, playlands, boardwalks, marinelands and related activities which charge admission do not constitute recreation. There shall be no temporary or permanent dwellings, except tents or dwellings for caretakers, guards, and other such salaried personnel deemed necessary to maintain facilities.

5. The following provisions relate to the area described in Section 4 of this Ordinance.

A. No one shall construct signs in excess of 6 square feet.

B. No one may construct a structure in excess of 40 feet in height.

C. No one may obstruct a corridor used for access to coastal lands and waters.

D. No one shall reduce the area of the beaches, except for the purpose of establishing dressing rooms, restrooms, showers, lifeguard towers, first aid stations, warning signs, barricades, beach access stairs and ramps and other uses related to beach activities.

E. No one shall dredge, fill, or otherwise alter any bay, estuary, salt marsh river mouth, slough or lagoon.

6. Highway One is hereby declared to be a scenic highway.

A. All portions of Highway One passing through the County are hereby declared to be 'scenic' and no one shall interfere in any way with the line of sight from the highway to the sea. As used in this section, line of sight includes, but is not limited to, construction or erection of any structure that by height, breadth, or location, impedes or distracts from the line of sight.

B. No advertising matter shall be placed by a fixed sign or structure within 500 feet of Highway One with the exception of informational signs placed by public entities.

7. No one may build, construct, assemble, maintain, or operate, within the county, an electric generating plant, unless voted for by a majority of voters on the question in a general, or special election.

8. No one may issue any permit for five years which would directly or indirectly facilitate the construction or assembly of an electric generating plant powered by atomic energy from nuclear fission."

grounds that the initiative would be invalid if approved, and whether or not, in pre-election suits, courts have the power to consider the issue of ultimate legal merits. There are cases where the courts have refused to hear the ultimate merits before the election and have ordered the election to be held. This procedure was followed with California Proposition 14 in 1964. (See *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529 [50 Cal.Rptr. 881, 413 P.2d 825].) There is language that indicates that the placing of the initiative on the ballot is purely ministerial, with no discretion. (See *Farley* v. *Healey* (1967) 67 Cal.2d 325 [62 Cal.Rptr. 26, 431 P.2d 650].) Yet the courts have decided questions of legal merit in suits to force local officials to place a measure on the ballot. (*Myers* v. *Stringham* (1925) 195 Cal. 672 [235 P. 448]; *Riedman* v. *Brison* (1933) 217 Cal. 383 [18 P.2d 947]; *Wallace* v. *Board of Supervisors* (1934) 2 Cal.2d 109 [39 P.2d 423]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558 [11 Cal.Rptr. 340]; *Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313 [21 Cal.Rptr. 452].) One case specifically approved the taxpayers' suit as a method for taking invalid measures off the ballot. (*Harnett* v. *County of Sacramento* (1925) 195 Cal. 676 [235 P. 445].)

The controlling Supreme Court case is *Farley* v. *Healey, supra,* 67 Cal.2d 325. The registrar refused to verify the signatures on the petitions. The court held that the registrar's duties under the San Francisco Charter were purely ministerial, and that he had no authority to refuse to act *unless specifically directed otherwise by a court.*

*Farley* has been interpreted and explained in *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250 [101 Cal.Rptr. 628]. In that case the city clerk refused to verify the signatures on an initiative. The court held that under *Farley,* no court was under a mandatory duty to determine the validity of an initiative in a pre-election proceeding. Even grave doubts as to constitutionality could not compel a court to rule. But where the legal issues were clear and could quickly be determined, the courts could undertake them. In the present case the trial court did undertake to resolve the issues and refused the writ of mandate.

■ Under the current state of the law, zoning may not be adopted through the initiative. The state law requires the holding of public hearings with public notice. (Gov. Code, §§ 65803, 65500.) Initiatives are limited generally to the kinds of measures the entity to which they are addressed can adopt. As a local government cannot adopt a zoning ordinance without a notice and hearing, initiatives in the field of zoning are invalid. The requirement that initiatives conform to local government procedure was first adopted with regard to the granting of the right to build and maintain toll bridges. (*Galvin* v. *Board of Supervisors* (1925) 195 Cal. 686 [235 P. 450];

*Newsom* v. *Board of Supervisors* (1928) 205 Cal. 262 [270 P. 676].) *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134 [277 P. 308], cited with approval in *City of Escondido* v. *Desert Outdoor Advertising, Inc.* (1973) 8 Cal.3d 785 [106 Cal.Rptr. 172, 505 P.2d 1012], was the first case to apply this reasoning to zoning. The case is on all fours with the instant case. The zoning ordinance was adopted by initiative without the necessary hearings and notice. The court held that therefore, the ordinance was invalid.

Both parties ably trace the development of this doctrine in their briefs. The appellant suggests that the rationale for the doctrine is mistaken, and that the law should be changed. This argument, however, should be addressed to the Supreme Court. As stated in *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], "[t]he decisions of this court [Supreme Court] are binding upon and must be followed by all the state courts of California." Though we recognize that the power of the initiative process must be liberally construed it is questionable whether environmental protection would be advanced by a change in the *Hurst* rule. Zoning proposals should have the benefit of public hearings and professional study by the local government's planning staff so as to integrate the proposal with the other zoning ordinances and particularly the city or county land use master plan. Overall planning would be seriously crippled if the initiative process could be used in this field.

In the recent case of *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137], the court held that the due process clause of the Fourteenth Amendment requires that an individual whose property is "affected by local land use controls" be given the opportunity for a hearing *before* he is deprived of any significant property interest. As the proposed initiative ordinance here unquestionably does seek to impose land use control and as there is no opportunity for hearing before it would become effective, the measure would clearly be invalid if adopted. Appellants admit that all of the provisions of the measure affect the use of land but claim that it is not a zoning law. This claim, however, becomes immaterial under *Scott* because it is admittedly a land use control measure.

The cases cited by appellants allowing the use of the referendum to repeal a zoning ordinance are of no help. The requirement of notice and hearing is not applicable to a referendum so it can be used in zoning matters.

The recent case of *City of Escondido* v. *Desert Outdoor Advertising, Inc.,* *supra,* 8 Cal.3d 785, limited the constitutional and statutory due process requirements to a proposal that involved a substantial interference with land use and provided that the determination of substantial interference depended

upon the facts of the particular case. In the present case, however, with the possible exception of the billboard regulations, a very substantial interference with land use is apparent from the provisions of the proposal and the *City of Escondido* exception would not apply.

█ Thus, the proposed initiative ordinance is invalid on its face because it violates the due process clause of the Fourteenth Amendment and in addition, because it is a proposed zoning ordinance that does not follow the procedure required by statute.

Whether the billboard regulations contained in the proposal would be valid if enacted we need not determine. The billboard regulations are a minor part of the whole initiative proposal and to order the proposal to be placed on the ballot when only a small part of it could be valid would be using the writ of mandate for the purpose of misleading the voters. Under these circumstances, the trial court properly denied the writ.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied March 29, 1973, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.