Filed 11/5/15

**CERTIFIED FOR PARTIAL PUBLICATION\***

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 051984 |
| | ) | |
| Plaintiff and Respondent, | ) | (Central Trial Court |
| | ) | No. 3WA01577) |
| v. | ) | |
| | ) | |
| OPTIMAL GLOBAL HEALING, INC. et al., | ) | |
| | ) | |
| Defendants and Appellants. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Los Angeles Superior Court, Central Trial Court, Melissa Widdifield, Judge. Affirmed.

Stanley H. Kimmel, Esq., for Defendants and Appellants.

John R. Prosser, City Attorney, for Plaintiff and Respondent.

\* \* \*

_____

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III.C., D., E. and F.

## I.  *INTRODUCTION*

On May 21, 2013, the voters of the City of Los Angeles (City) approved Proposition D, a measure placed on the ballot by the City Council to regulate medical marijuana businesses (MMB's).  (See *People v. Trinity Holistic Caregivers, Inc.* (2015) 239 Cal.App.4th Supp. 9, 14 (*Trinity Holistic*), citing City Ord. No. 182,580.)  This measure superseded previous City laws concerning MMB's, and enacted Los Angeles Municipal Code (LAMC) section 45.19.6.2, subdivision A, making it a misdemeanor to "own, establish, operate, use, or permit the establishment or operation of a [MMB] . . . ."  Proposition D also enacted LAMC section 45.19.6.3, which provides limited immunity from prosecution for violating LAMC section 45.19.6.2.  (See *Trinity Holistic*, *supra*, 239 Cal.App.4th at p. Supp. 14.)

Defendants[1] Optimal Global Healing, Inc. and Demarcio Posey appeal the judgment resulting from their convictions for two counts of operating an unlawful MMB.  Defendants contend the judgment should be reversed on the following grounds: (1) Proposition D is invalid because it was enacted without first being subjected to a planning commission hearing; (2) the trial court improperly ruled mens rea was not an element of the offense; (3) the court improperly excluded evidence that the City treated the Business Tax Registration Certificate (BTRC) held by Optimal Global Healing as a business license or equivalent, thereby denying defendants of a fair trial and the right to present a defense; (4) the inference drawn by the court, and urged by the prosecutor, that Posey was the only operator of Optimal Global Healing, violated Posey's right not to testify and, in the prosecutor's case, constituted *Griffin*[2] error; (5) the court failed to exclude evidence not provided by the prosecution in response to a defense motion for discovery; and (6) there was insufficient evidence to support Posey's conviction.  We affirm the judgment.

---

[1]When referred to in their individual capacities, defendants are identified as Optimal Global Healing and Posey, respectively.

[2]*Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

## II. *FACTS*[3]

### A. *Prosecution Case*

In March 2012, Posey incorporated Optimal Global Healing, naming himself as the agent for service of process, at 11824 West Pico Boulevard in the City. At the same time, Posey filed a Statement of Information listing himself as the corporation's only officer, in the positions of chief executive officer, secretary and chief financial officer. The following month, Posey filed a business tax application for a BTRC in the name of Optimal Global Healing, which was described on the application as "Retail Medical Sup[p]ly." In August 2012, Posey submitted a second tax application that described the business as "Medical Marijuana/Pipes & Ass." The BTRC issued in April 2012 described the business as "Retail Sales"; the BTRC issued in August 2012 described the business as "Medical Marijuana Collectives." All of the aforementioned documents indicated Optimal Global Healing was located at the same West Pico Boulevard address.

On July 25, 2013, Los Angeles Police Department (LAPD) Officer Brent Olsen, a 19-year veteran who worked for the Narcotics Abatement Unit for 11 years, began an investigation into a medical marijuana dispensary on West Pico. Olsen observed the front of the location, where he saw a lighted neon "open" sign in the window (which was otherwise covered by drawn shades). People were both entering and leaving the business. The storefront was painted green and displayed the words "West L.A." and "Optimal Global Healing." Olsen did not go inside Optimal Global Healing and did not see Posey.

As part of the investigation, Olsen also searched the internet for the location address and business name, and found an advertisement on "Weed Maps," a web site that tracks medical marijuana dispensaries and doctors who issue recommendations for medical marijuana. Olsen printed an internet advertisement, which included a photograph of the Optimal Global Healing

---

[3]This case was tried as a court trial. Relevant pretrial motions include an "invitation to the court" to dismiss the case pursuant to Penal Code section 1385, filed on January 13, 2014, and a nonstatutory motion for dismissal filed on June 26, 2014.

location with a lighted green cross in the window, and a list of guaranteed maximum prices that promised a customer would pay no more than $10 for a gram of "top shelf" marijuana or $35 for a "cap" (i.e., one-eighth of an ounce), and no more than $45 for a cap of "private reserve" marijuana.

On August 12, 2013, LAPD Detective Christopher Delatorre, a 17-year veteran also assigned to the Narcotics Abatement Unit for 11 years, visited Optimal Global Healing but did not see Posey and did not know who was operating the business that day. Delatorre spoke with a Hispanic male who was leaving Optimal Global Healing. The male removed a pill bottle containing marijuana from a white paper bag and showed it to Delatorre. On the pill bottle label, partially obscured by black marker, were the words "compliance with H&S code 11362.5."[4]

On August 21, 2013, LAPD Officer Jason Haggis, also assigned to the Narcotics Abatement Unit, visited Optimal Global Healing. Haggis saw a Hispanic male approach the location on a skateboard and go inside. Shortly thereafter, the male left Optimal Global Healing carrying a small white bag. Haggis spoke with the male, who produced a California identification card and a medical marijuana recommendation. Haggis did not go inside Optimal Global Healing and did not, to his knowledge, see Posey.

Based on his experience,[5] the People's exhibits, his own testimony and that of the other officers, Olsen opined Optimal Global Healing was a location where marijuana was distributed to qualified patients—i.e., patients in possession of a medical marijuana recommendation.

B.    *Defense Case*

Records of the Department of Building and Safety, which is tasked with code enforcement for zoning matters, showed no orders to comply or notices of noncompliance issued

---

[4]Olsen later testified that pill bottles such as the one photographed by Delatorre are common packaging for marijuana at medical marijuana dispensaries.

[5]Olsen's experience included academy training regarding marijuana and marijuana purchases in an undercover capacity, using one of two marijuana recommendations he possessed, from 30 different medical marijuana clinics.

to the owner or operator of the West Pico location. Department of Building and Safety records also showed no business license or certificate of occupancy for the West Pico location was suspended or revoked.

## III. *DISCUSSION*

A. *Validity of Proposition D*

California law allows medical marijuana dispensaries to be lawfully operated notwithstanding California statutes which otherwise make the possession, transportation, and sale of marijuana a criminal act. (See Health & Saf. Code, §§ 11362.5, subds. (d), (e), 11362.7, subd. (c)-(f), 11362.775.) California law also allows cities and counties to regulate the existence and operation of dispensaries. (See *Trinity Holistic*, *supra*, 239 Cal.App.4th at p. Supp. 16, citing *City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 737-738 (*City of Riverside*).) "Local authority to regulate land use for the public welfare is an inherent preexisting power, recognized by the California Constitution, and limited only to the extent exercised 'in conflict with general laws.' (Cal. Const., art. XI, § 7.)" (*Id*. at p. 754, fn. 8.)

Proposition D, which added article 5.1 (LAMC, § 45.19.6 et seq.) to chapter IV of the LAMC, was intended "to enact a materially new ordinance that (a) prohibit[ed] medical marijuana businesses, but (b) grant[ed] a limited immunity from the enforcement of its prohibition to those medical marijuana businesses that do not violate the restrictions set forth in this ordinance, until such time as the California Supreme Court rules regarding what cities can and cannot regulate and the City enacts new medical marijuana legislation consistent with that judicial guidance." (LAMC, § 45.19.6.) According to defendants, however, Proposition D conflicts with zoning laws contained in the Government Code, and is therefore invalid. We exercise de novo review of this issue. (See *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1276; *People v. Conley* (2004) 116 Cal.App.4th 566, 573, fn. 6.)

1. The Parties' Arguments

Defendants argue Proposition D's regulation of MMB's affected land use and, as such,

5

contained a zoning component, which in turn required the City's planning commission "hold a public hearing on the proposed zoning ordinance or amendment" and provide notice thereof as set forth in the indicated code sections. (Gov. Code, §§ 65854, 65804).[6] Defendants further assert it is undisputed Proposition D was enacted without prior referral to the planning commission. As a result, according to defendants, the ordinance thus enacted is invalid.

In response, the People argue: (1) because Proposition D enacted a nuisance ordinance related to public health, safety and morals, not a zoning ordinance, section 65804 did not apply; (2) even if Proposition D was a zoning ordinance, because it was enacted by the voters rather than the City Council, section 65804 did not apply; and (3) even if section 65804 applied, Proposition D may not be invalidated now because its validity was not challenged within 90 days of its effective date.

2.     Proposition D's Zoning Component

Section 65850 provides as relevant: "The legislative body of any county or city may, pursuant to this chapter, adopt ordinances that . . . : [¶] (a) Regulate the use of buildings, structures, and land . . . ." In strikingly similar language, the Los Angeles City Charter prescribes procedures for the "adoption, amendment or repeal of ordinances, orders or resolutions by the [City] Council concerning: [¶] (1) the creation or change of any zones or districts for the purpose of regulating the use of land; [¶] (2) zoning or other land use regulations concerning . . . use of buildings or structures . . ." (L.A. City Charter, § 558(a).)[7]

With these descriptions in mind, it would seem self-evident that an ordinance that makes it a misdemeanor to "own, establish, operate, use, or permit the establishment or operation of a [MMB] . . ." (LAMC, § 45.19.6.2, subd. A) must also have the effect of "[r]egulat[ing] the use

---

[6]All further statutory references are to the Government Code unless otherwise stated.

[7]Per section 65803, state zoning law does not apply to charter cities, except where otherwise provided, or where the charter city does not prescribe procedures for zoning (see *Ferris v. Alhambra* (1961) 189 Cal.App.2d 517, 521). As noted, the Los Angeles City Charter prescribes such procedures. Thus, for ease and clarity of discussion, we will limit our references to the applicable provisions of the state zoning law.

of buildings, structures, and land." Similarly, the provision of limited immunity from prosecution for violating LAMC section 45.19.6.2 by meeting a number of restrictions—including, for example, not being "located within a 1,000-foot radius of a school, or within a 600-foot radius of a public park, public library, religious institution, child care facility, youth center, alcoholism, drug abuse recovery or treatment facility, or other [MMB]" (LAMC, § 45.19.6.3, subd. O)—must also be understood to "[r]egulate the use of buildings, structures, and land."

We therefore reject the People's argument that Proposition D is a nuisance ordinance and not a zoning ordinance. (See *People's Lobby, Inc. v. Board of Supervisors* (1973) 30 Cal.App.3d 869, 873 [claim that a hearing was not required because a proposed ordinance was not a zoning law deemed immaterial because the ordinance was "admittedly a land use control measure"], overruled on other grounds by *Associated Home Builders of the Greater Eastbay, Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14 (*Associated Home Builders*).) Indeed, it was the same restrictions on land use that brought Proposition D within the ambit of zoning law that also served the purpose of nuisance abatement. As the Supreme Court observed: "Nuisance law is not defined exclusively by what the state makes subject to, or exempt from, its own nuisance statutes. . . . [A] city's or county's inherent, constitutionally recognized power to determine the appropriate use of land within its borders [citation] allows it to define nuisances for local purposes, and to seek abatement of such nuisances. [Citation.]" (*City of Riverside*, *supra*, 56 Cal.4th at p. 761, italics omitted.) The City of Riverside, for example, "[i]n the exercise of its inherent land use power, . . . declared, by zoning ordinances, that a '[m]edical marijuana dispensary' . . . —'[a] facility where marijuana is made available for medical purposes . . .' [citation]—is a prohibited use of land within the city and may be abated as a public nuisance. [Citations.]" (*Id*. at p. 738, fn. omitted.)

3. Sections 65804 and 65854 Are Inapplicable

The stated purpose of section 65804 is "to implement minimum procedural standards for the conduct of city and county zoning hearings." Toward that end, the section requires, inter

7

alia: "All local city and county zoning agencies shall develop and publish procedural rules for conduct of their hearings so that all interested parties shall have advance knowledge of procedures to be followed. The procedural rules shall incorporate the procedures in [s]ection 65854." (§ 65804, subd. (a).) Section 65854 provides in part: "The planning commission shall hold a public hearing on the proposed zoning ordinance or amendment to a zoning ordinance. . . ."

We agree with the People's response that, because Proposition D was enacted by voters rather than the City Council, sections 65804 and 65854 did not apply, and a hearing before the planning commission was not required. Indeed, with regard to the initiative process,[8] the Supreme Court observed: "The notice and hearing provisions of the present zoning law (. . . §§ 65853-65857) . . . make no mention of zoning by initiative. The procedures they prescribe refer only to action by the city council, and are inconsistent with the regulations that the Legislature has established to govern enactment of initiatives. . . . [W]e conclude that sections 65853-65857 do not apply to initiative action, . . ." (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 596.) "[T]he statutory notice and hearing provisions govern *only ordinances enacted by city council action* and do not limit the power of municipal electors, reserved to them by the state Constitution, to enact legislation by initiative." (*Id*. at p. 588, italics added.)

As the Supreme Court explained: "The Legislature plainly drafted the [notice and hearing] provisions of the zoning law with a view to *ordinances adopted by vote of the city council*; the provisions merely add certain additional procedural requirements to those already specified in . . . sections 36931-36939 for the enactment of ordinances in general." (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 594, italics added.) "Procedural requirements which govern *council* action, however, generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council. No one would contend, for example, that an initiative of the people failed because a quorum of councilmen had

---

[8] "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8(a).)

not voted upon it, any more than one would contend that an ordinary ordinance of a council failed because a majority of voters had not voted upon it." (*Ibid*., fn. omitted.) As with initiatives, City Council-sponsored ballot measures are adopted (or rejected) by vote of the electors, not by vote of the City Council.

In any case, the Government Code notice and hearing requirements for proposed zoning ordinances were intended by the Legislature "to insure uniformity of, and public access to, zoning and planning hearings while maintaining the maximum control of cities and counties over zoning matters." (§ 65804.) As such, with respect to insuring public access, the requirements may be seen to address due process concerns. (See, e.g., *Hurst v. City of Burlingame* (1929) 207 Cal. 134, 141 [dicta] (*Hurst*), overruled on other grounds by *Associated Home Builders*, *supra*, 18 Cal.3d at p. 596.) Thus, while concluding "*Hurst* erred in holding the notice and hearing provisions of the Zoning Act of 1917[9] applied to zoning ordinances enacted by initiative" (*ibid*.), *Associated Home Builders* suggested the initiative process itself gave potentially affected property owners sufficient notice and opportunity to be heard. Citing to a 1927 case that first applied the recently amended initiative law to zoning matters, *Associated Home Builders* observed: "The opinion reasoned that since the city council had the legislative authority to enact zoning ordinances, the people had the power to do so by initiative or referendum. Rejecting an argument that the referendum procedure denied affected persons the right, granted them by municipal ordinance, to appear before the city council and state their views on the ordinance, the court replied that 'the matter has been removed from the forum of the Council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens. . . .' [Citation.]" (*Id*. at p. 592, quoting *Dwyer v. City Council of Berkeley* (1927) 200 Cal. 505, 516.)[10]

---

[9] The Zoning Act of 1917 was a state law prescribing the methods by which a local government could enact a zoning ordinance. (*Hurst*, *supra*, 207 Cal. at pp. 138-139.)

[10] Two years before *Associated Home Builders*, the Supreme Court reversed a trial court's finding that a zoning ordinance was invalid because the City of San Diego's initiative procedure included no

The same is true in the instant case. The removal of the ordinance from the City Council to the electorate rendered the planning commission hearing component of the Government Code inapplicable while simultaneously protecting the rights of the citizenry to (a) notice of the proposed ordinance, and (b) an opportunity to participate in the democratic process of passing the ordinance.

4.  Prejudice

"There shall be no presumption that error is prejudicial or that injury was done if the error is shown." (§ 65010, subd. (b).)[11]  In this regard, defendants have not shown the City's failure to refer Proposition D to the planning commission for a public hearing was "prejudicial error and that [they] . . . suffered substantial injury from that and that a different result would have been probable if the error had not occurred." (*Ibid.*)

As defendants acknowledged in their brief supporting their invitation to the trial court to dismiss the case pursuant to Penal Code section 1385, a previous draft of the underlying ordinance was referred to the planning commission on November 19, 2012. Defendant explained an iterative process followed in which "the [p]lanning [c]ommission held hearings,

provision for notice and a hearing, and federal due process precluded the adoption of a zoning ordinance without affording such notice and a hearing. (*San Diego Building Contractors Assn. v. City Council of San Diego* (1974) 13 Cal.3d 205, 207.)  The Supreme Court explained: "[I]t is black letter constitutional law that due process requires 'notice and hearing' only in quasi-judicial or adjudicatory settings and not with respect to the adoption of general legislation.  Since the enactment of the instant general zoning ordinance through the initiative process was unquestionably a legislative, as distinguished from adjudicative, act, the constitutional requirements of 'notice' and 'hearing' do not apply." (*Id*. at p. 211.)  The Supreme Court later expressed its disapproval of the dictum regarding "black letter constitutional law," finding instead that "[n]otice and hearing now characterize the great bulk of legislating and rulemaking." (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 621.)

[11]Defense counsel stated at oral argument on October 22, 2013, that the adjuration against any presumption of prejudice in section 65010 was limited to procedural errors pertaining to notice.  In fact, this is not the case, and the language of the section reveals a broader scope.  "No action, inaction, or recommendation by any public agency or its legislative body or any of its administrative agencies or officials on any matter subject to this title shall be held invalid or set aside by any court on the ground of the improper admission or rejection of evidence or by reason of *any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure* subject to this title, . . ." (§ 65010, subd. (b), italics added.)

authorized a change in the draft ordinance, wrote a 2-page report to the City Council, transmitted the package to the City Council Planning and Land Use Committee, and served its report on 22 named individuals, some members of the public, some City staff."

On November 29, 2012, as described in the City Attorney's report to the City Council dated January 25, 2013,[12] the planning commission "recommended adoption of the proposed [Limited Immunity Ordinance], and granted the City Attorney authority to make further corrections to the proposed [Limited Immunity Ordinance] in response to verbal and written comments received by" the planning commission. Indeed, the agenda and official minutes for the special planning commission meeting held on November 29, 2012, indicate the meeting was a noticed public hearing at which the public was invited to submit written requests to address the commission regarding the proposed ordinance. Thereafter, as also described in the Proposition D report, the City Council requested the City Attorney "prepare the necessary election ordinance and ballot resolutions to place an ordinance proposition on the May 21, 2013[] ballot to include provisions *substantially similar to those of the draft ordinance*" referred to the planning commission on November 19, 2012. (Italics added.) In other words, the proposed ordinance placed on the May 21, 2013 ballot as Proposition D was a product of the back-and-forth process between the planning commission, the City Council and the City Attorney, and was "substantially similar" to the version of the proposed ordinance referred to the planning commission at the beginning of the process.[13]

---

[12]This report concerned the placement of an ordinance proposition on the May 21, 2013 ballot and is hereafter referred to as the "Proposition D" report.

[13]Between the two draft versions of the underlying ordinance, the sections providing the definition of an MMB (LAMC, § 45.19.6.1) and setting forth the prohibited activities (LAMC, § 45.19.6.2) are identical. The conditions required for limited immunity from prosecution under LAMC section 45.19.6.2, as set forth in LAMC section 45.19.6.3, track one-to-one across all 15 subdivisions—i.e., subdivisions A through O. Thus, subdivision A in both drafts requires the MMB to have been operating as an MMB as of September 14, 2007; subdivision B in both drafts requires the MMB to have timely registered with the City Clerk under the Interim Control Ordinance (ICO); and so on. Several of the conditions contain minor differences where, for example, the use of the word "timely" in subdivision B of the earlier draft is spelled out in the later (Prop. D) draft to require registration with the City Clerk by a specific date—i.e., November 13, 2007. Substantively, subdivision O in the earlier draft prohibited

Unlike in *Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, where "the process was fundamentally flawed by the *complete omission* of any public notice or hearings when adopting the [subject] zoning ordinance [citations]" (*id*. at p. 1260, italics added), the iterative process described above included a noticed public hearing before the planning commission and produced comments which were incorporated into the final version of the ordinance placed on the ballot.  Any failure to refer the final version of the ordinance, i.e., the one that became "Proposition D," to the planning commission would seem at most to be "a mere minor technical defect" (*ibid*.).  Even if we were to assume the Government Code required Proposition D, in its final form, to be submitted to the planning commission, the absence of such a submission did not invalidate either the City Council's placement of the proposition on the ballot or the subsequent passage of the proposition by the electorate.[14]

B.      *Mens Rea*

Defendants contend they were improperly convicted in the absence of mens rea or guilty intent, thereby violating Penal Code section 20's edict that "[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Defendants argue the underlying ordinance, LAMC section 45.19.6, does not purport to protect the public from serious harm since it allows 135 MMB's to operate, but at the same time it imposes a substantial penalty.

---

an MMB from being "located within a 1,000-foot radius of a school, public park, public library, religious institution, child care facility, youth center, alcoholism or drug abuse recovery or treatment facility, or other [MMB]."  In the later draft, the 1,000-foot radius was changed to specify a 600-foot radius for all but the restriction near a school, which remained at 1,000 feet.  In other words, the later draft was less restrictive on MMB's.  In addition, the amount of time an otherwise qualified MMB had to relocate to avoid disqualification under subdivision O was increased from 90 days to 180 days after the effective date of the article.

[14]In light of our disposition on this issue, we need not reach the City's argument that Proposition D cannot be invalidated because its validity was not challenged within 90 days of June 20, 2013, the effective date of the enacted ordinance.  (See § 65009, subd. (c)(1).)  Nonetheless, we note, "[u]nder well-established authority, a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief."  (*Styne v. Stevens* (2001) 26 Cal.4th 42, 51.)  Further, although some limitations statutes expressly apply to the defensive use of a limitations period (see, e.g., § 66499.37), section 65009 contains no such language.

12

In response, the People observe that, in addition to not explicitly requiring any mens rea, LAMC section 45.19.6.2 defines a misdemeanor offense punishable by a maximum of six months in county jail or a fine of up to $1,000, or both (see LAMC, § 11.00, subd. (m)). The People further argue that analyzing the section under *In re Jorge M.* (2000) 23 Cal.4th 866 (*In re Jorge M.*) favors a strict liability interpretation. We agree.

Where legislative intent is not readily discerned from the text itself, *In re Jorge M.* found consideration of the following factors useful: "(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime . . . ; (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts . . . ; (6) the difficulty prosecutors would have in proving a mental state for the crime . . . ; (7) the number of prosecutions to be expected under the statute . . . ." (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 873, citing 1 LaFave & Scott, Substantive Criminal Law (1986) § 3.8(a), pp. 342-344.) We consider the ordinance with these guidelines in mind.

LAMC section 45.19.6 states as its purpose: "[T]o stem the negative impacts and secondary effects associated with the ongoing medical marijuana businesses in the City, including but not limited to the extraordinary and unsustainable demands that have been placed upon scarce City policing, legal, policy, and administrative resources; neighborhood disruption, increased transient visitors, and intimidation; the exposure of school-age children and other sensitive residents to medical marijuana; drug sales to both minors and adults; fraud in issuing, obtaining or using medical marijuana recommendations; and murders, robberies, burglaries, assaults, drug trafficking and other violent crimes." The focus on public protection and the severity of the stated public harm weigh in favor of strict liability.

As already noted, LAMC section 45.19.6.2, subdivision A, which declares it unlawful "to own, establish, operate, use, or permit the establishment or operation of a medical marijuana business . . . ," does not use such words as "knowingly," "willfully" or "intentionally" in specifying the unlawful conduct, or otherwise state an explicit mens rea requirement. Also

13

noted above is that the maximum punishment for violation of this section is six months in county jail and a $1,000 fine (LAMC, § 11.00, subd. (m)). "'Other things being equal, the greater the possible punishment, the more likely some fault is required.'" (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 873.) Both of these factors weigh in favor of strict liability.[15]

"[T]he defendant's opportunity to ascertain the true facts" is an interpretive guideline that concerns offenses where "the characteristics that bring the defendant's conduct within the criminal prohibition may not be obvious to the offender." (*In re Jorge M.*, *supra*, 23 Cal.4th at pp. 873, 881.) Here, the ease with which defendants could determine they were engaged in the prohibited conduct of operating an MMB weighs in favor of strict liability. At the same time, other than by inferring or presuming defendants knew what they were doing when they began operating an MMB, prosecutors might well have a difficult time proving defendants knew what they were doing was prohibited. This, too, weighs in favor of strict liability.

With regard to the number of expected prosecutions, the trial court found there were "hundreds and hundreds" of prosecutions under Proposition D, which also weighed in favor of strict liability. (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 873 ["The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault"].) The parties do not contest this factual finding.

LAMC section 45.19.6.2 states a strict liability offense. Thus, the trial court properly ruled the People were not required to prove mens rea in order to secure a conviction for the illegal operation of an MMB.

C.    *Exclusion of Evidence of the BTRC Renewal*   [Not Certified for Publication]

Defendants contend the City treats BTRC's as a business license or equivalent, and the court's exclusion of evidence supporting this point deprived them of a fair trial and the right to present a defense. "A trial court's exercise of discretion in admitting or excluding evidence is

---

[15]It has been strongly suggested that where a statute defines a criminal offense without any mention of mens rea, and the offense is punishable by no more than six months in jail, those two factors could be determinative. (*People v. Spence* (2005) 125 Cal.App.4th 710, 718-719.)

14

reviewable for abuse of discretion. [Citation.] Abuse of discretion may be found if the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner. [Citation.]" (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 678.)

Defendants sought to introduce into evidence a screen capture printout of the web site maintained by the City's finance office for BTRC tax renewal calculation, which also "informs BTRC holders of the $1 tax per SB 1186." Defendants sought introduction of the printout on the theory that the $1 tax levied on BTRC renewals was evidence that the City treated a BTRC as a business license, permit or equivalent instrument because, as set forth in section 4467, subdivision (a), "any applicant for a local business license or equivalent instrument or permit, and from any applicant for the renewal of a business license or equivalent instrument or permit, shall pay an additional fee of one dollar ($1) for that license, instrument, or permit, which shall be collected by the city, county, or city and county that issued the license, instrument, or permit." The court ruled the exhibit was irrelevant and denied defendants' motion in limine to admit it. After reading the submitted web page, the court stated: "Okay. This fee relates to disability access and talks about imposing $1 state fee on applicants for a local business tax license. The court finds that this is irrelevant."

The court did not explain the basis of its ruling.[16] That said, the applicable law is clear that the limited immunity from prosecution under LAMC section 45.19.6.2, subdivision A, provided in LAMC section 45.19.6.3, is not available based on the mere possession of a BTRC. Indeed, LAMC section 45.19.6.3 states 15 restrictions with which an MMB must have complied before it can claim immunity from prosecution—only one of which pertained to possession of a BTRC. (LAMC, § 45.19.16.3, subd. A [the MMB must have been "operating in the City as a medical marijuana business by September 14, 2007, as evidenced by a business tax registration or tax exemption certificate issued by the City on or before November 13, 2007"].)

_____

[16]The court did, however, during an earlier discussion of defendants' theory that the MMB was a "pre-existing non-conforming use," advise defense counsel: "You've got some defense out there that I think is an absolutely irrelevant defense. I'm not going to let you put on that defense just because you think it's relevant and I think it has no place in this trial."

A second restriction provides: "Every [MMB] is prohibited that did not register with the City Clerk by November 13, 2007 in accordance with all requirements of the City's Interim Control Ordinance 179,027 [ICO]." (LAMC, § 45.19.6.3, subd. B.) Similar to Proposition D, the ICO prohibited the establishment or operation within the City limits of what it defined as a medical marijuana dispensary, but with a large exception: "[A]ny dispensary established before September 14, 2007 (the effective date of the ICO), and operated in accordance with state law would be allowed to continue so long as it filed various specified documents with the city clerk within 60 days of 'the adoption' of the ICO." (*420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1327, italics omitted, fn. omitted.) One of seven documents required by the ICO was "a City tax registration certificate." (*Id.* at p. 1327, fn. 3.)

Thus, under both LAMC section 45.19.6.3 and the ICO—compliance with which, as noted, was also required for the limited immunity under LAMC section 45.19.6.3—mere possession of a BTRC, however the City may regard that document, was not sufficient to lawfully operate an MMB. We conclude the trial court did not abuse its discretion by excluding the evidence defendant sought to admit of the City's web site for BTRC renewal. Moreover, the erroneous exclusion of evidence requires reversal of a judgment only when it results in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 354; *Cassim v. Allstate Insurance Co.* (2004) 33 Cal.4th 780, 800.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.] 'We have made clear that a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' [Citation.]" (*Id.* at p. 800, italics omitted.)

Defendants have failed to make any showing that exclusion of the printout of the City's BTRC renewal web site had any impact whatsoever on the outcome of the case. No explanation is given as to how, given the strictures of the LAMC section 45.19.6.3 in defining the limited immunity from prosecution available under that section, they could have maintained a defense

16

based on the mere possession of a BTRC.

D.      *Fifth Amendment/Griffin Error*   [Not Certified for Publication]

       1.      Legal Principles

"""Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." [Citation.]  The defendant's "absolute right not to be called as a witness and not to testify" arises from the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution.  [Citation.]'  [Citation.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.)  The privilege against self-incrimination prohibits the trier of fact from considering the defendant's decision not to testify in reaching its verdict or from drawing any inferences from his silence.  (See *People v. Roybal* (1998) 19 Cal. 4th 481, 514, citing *Griffin*, *supra*, 380 U.S. at pp. 611-615.)

That said, although, pursuant to *Griffin*, "'a prosecutor is forbidden to comment "'either directly or indirectly, on the defendant's failure to testify in his defense,'" the prosecutor may comment "'on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses.'" [Citation.]'  [Citation.]" (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1333.)  "Nonetheless, . . . [the Supreme Court has] held that a prosecutor may commit *Griffin* error if he or she argues to the [trier of fact] that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand.  [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339.)

       2.      Application of the Law

Defendants contend the court inferred, and the People argued, Posey was the only operator of Optimal Global Healing on August 12 and August 21, 2013, despite there being no evidence of Posey's presence at Optimal Global Healing on either date, based on the fact Posey did not take the stand.  Defendants argue the court's inference and the People's argument violated Posey's right not to testify and constituted *Griffin* error, and that Posey's conviction was thus based on reversible error.  Defendants' claim is without merit.  The record on appeal

shows neither the prosecutor nor the court inferred that because Posey did not take the stand he must be guilty or that certain other conclusions must be true.

The trial court made the following comment: "Isn't it a reasonable inference for the court to draw that -- or for the trier-of-fact to draw if no[] evidence has been proffered that anybody else had any other dominion or control over any of the aspects of the mutual benefit corporation, and the only evidence that we do have, the only thing that is in evidence is financial records, corporate documents, that had Mr. Posey's name on it.  That's all there is --"[17]

Similarly, during closing argument, the prosecutor set up a comparison between a McDonald's restaurant and defendants' MMB, analogizing, for example, McDonald's "golden arches" to the green cross on defendants' storefront.  The prosecutor then argued: "And then to use the analogy . . . , we've got corporate paperwork that says you know, this is a McDonald's. I'm getting the special McDonald's tax.  And you know, I'm Mr. Posey, and I've put my name on every single document having to do with a McDonald's and even for general corporations, yeah, . . . there's no evidence whatsoever that sort of, you, Mr. Posey's said no, we're not going to sell marijuana.  We're not going to sell marijuana and he was overridden by the majority of other members.  And counsel has talked about other members, but there's absolutely no evidence whatsoever that there's anybody else involved in the company. [¶] And based on the state of the evidence, the only reasonable inference is that Optimal Global Healing is a medical marijuana business and that Mr. Posey is the only person that has any kind of management or control over it . . . ."

Both the court's comment and defense counsel's argument pertained to the state of the evidence and, assuming there were other people who could have testified Posey did not have ultimate authority over the company, on defendants' failure to call any of those people as

_____

[17]The court also commented shortly before suggesting the aforedescribed inference: "And doesn't the fact that [Posey]'s identified as an officer of Optimal Global Healing, doesn't that suggest that he's got control and authority?"

witnesses.  As the People suggest in their brief, the property owner who leased the premises to defendants, workers and employees at the location, or those who did have ultimate authority over the activity at the business—any of these people could have been called.  Defendants could also have subpoenaed records from the Department of Water and Power or other utilities if those utilities were in somebody else's name.  Defendants argue they could not subject another witness to likely prosecution, but that rationale would presumably not apply to the property owner or any utility records that might have been subpoenaed.

In any case, neither the court nor the prosecutor inferred that Posey was either present at the MMB or in dominion and control of the business on the dates in question based on the fact he did not testify.  Rather, the comments of both pertained to the state of the evidence and any inferences that could be drawn given defendants did not produce any contravening evidence— despite the fact that whether Posey was the only person with control of the business would not seem to be an issue only Posey could contradict.  Defendants have not established the prosecutor committed *Griffin* error or that the trial court considered Posey's decision to remain silent in reaching its verdict.

E.  *Failure to Exclude Evidence Not Provided in Discovery*   [Not Certified for Publication]

Defendants claim there were two discovery violations under Penal Code section 1054.1. First, the People did not disclose the last names of Juan and Julio, the two customers of defendants' business who were observed and briefly interviewed by LAPD police officers during their investigation.  Second, the People did not provide evidence of Posey's February 2006 arrest and subsequent conviction used in their trial brief, in closing and in their argument for sentencing.

With regard to the customer last names, defendants argue this information was also *Brady*[18] material in that, as customers, Juan and Julio could presumably have testified Posey was not present at the business on the dates in question.  This is a specious argument because no

_____

[18]*Brady v. Maryland* (1963) 373 U.S. 83.

19

evidence of Posey's presence was presented at trial and Posey's conviction was not based on any finding he was present.[19] Any testimony Juan and Julio could have provided that Posey was not present would not have been exculpatory. As a result, their last names were not material, and there was no *Brady* violation in withholding them. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 952 ["due process of law requires that the prosecution disclose material exculpatory evidence to an accused"].)

Defendants also argue that use of Juan and Julio's out-of-court statements at trial "would have" violated Posey's right under the Sixth Amendment to the United States Constitution to be confronted by the witnesses against him. (See *Crawford v. Washington* (2004) 541 U.S. 36, 42.) Presumably defendants mean such a violation would have occurred if statements from Juan or Julio that Posey was present had been introduced. But, since no such statements were introduced, defendants' argument is meritless.

Regarding Posey's 2006 arrest and conviction, the trial court found the docket sheet containing the pertinent information to be "extraordinarily prejudicial and far more prejudicial than probative, except in this one limited circumstance"—i.e., impeaching Posey if he took the stand and denied "he ha[d] any connection with Optimal [Global] Healing." In any case, because Posey did not take the stand, he failed to preserve the tentative admission of the potential impeachment evidence as an issue on appeal. (See *Luce v. United States* (1984) 469 U.S. 38, 43 (*Luce*) ["We hold that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"]; *People v. Collins* (1986) 42 Cal.3d 378, 383-388 (holding "impeachment by prior felony conviction does not violate the California privilege against self-incrimination" and prospectively adopting the *Luce* rule].)

---

[19]CALCRIM No. 451, for example, provides, with respect to the liability of corporate officers: "The People must prove that the defendant either personally committed or was a direct participant in the crime charged. The fact that the defendant is an officer of the corporation is not sufficient by itself to support a finding of guilt. [¶] . . . [¶] To prove that the defendant was a direct participant in the crime charged, the People must prove that: [¶] 1. The defendant had the authority to control <the alleged misconduct>[;] [¶] and [¶] 2. The defendant failed to/authorized/caused/permitted <the alleged misconduct>." There is no requirement that the corporate officer have been present on any occasion.

Posey is not entitled to review of this issue on appeal.

F.    *Sufficiency of the Evidence*   [Not Certified for Publication]

"""'In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]' [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of facts are liberally construed to support the judgment.  [Citation.]'''  [Citations.]"  (*Axis Surplus Insurance Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.)

Defendants contend there was no evidence to connect Posey with the MMB on the dates in question, nor was any connection made between Posey and the internet evidence and medical recommendation photograph relied on by the People in their closing argument.  Indeed, these documents were admitted against Optimal Global Healing only and therefore, according to defendants, did not support Posey's conviction.

However, defendants' obtaining a BTRC for taxation as a medical marijuana collective was—if not "tantamount to a confession that the business was a medical marijuana business," as the People argue in their brief—then certainly substantial evidence of that proposition inasmuch as persons engaged in the distribution of marijuana to qualified patients were required to obtain a BTRC.  (LAMC, § 21.50, subd. (c).)  Moreover, the testimony of Olsen, Delatorre and Haggis is substantial evidence the MMB was operating as an MMB on August 12 and August 21, 2013, respectively, the dates in question.

As to Posey's guilt, his participation in obtaining the BTRC for Optimal Global Healing, and the fact he was the sole officer for Optimal Global Healing listed on a number of corporate documents, is substantial evidence he had dominion and control over the establishment and operation of Optimal Global Healing as an MMB.  Even apart from the required elements for proving the liability of a corporate officer, the very offense with which defendants were charged, as defined in LAMC section 45.19.6.2, subdivision A, is stated in the alternative—i.e., to "own,

21

establish, operate, use, *or permit the establishment or operation* of a [MMB] . . . ." (Italics added.) The evidence cited above, in addition to sufficiently establishing Posey's dominion and control over the business, constitutes substantial evidence he permitted the unlawful activity.

Defendants also argue Posey cannot be found guilty of participating in the operation of Optimal Global Healing's business based on having executed corporate documents because those documents were signed more than one year before he was charged, which is outside the one-year limitations period for misdemeanors. This argument is unconvincing. Posey's signature on the corporate documents was evidence of his participation in the unlawful activity, not the activity itself.

[The balance of the Opinion is to be published.]

IV. *DISPOSITION*

The judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**

_____
KUMAR, J.

We concur:

_____
P. McKAY, P. J.

_____
RICCIARDULLI, J.

22